## SAMMIS v. MARKS, Judge.

No. 4477.    Decided December 17, 1926.    (252 P. 270.)

**28**

*H. Van Dam, Jr.,* and *C. A. Gillette,* both of Salt Lake City, for plaintiff.

*Evans & Sullivan,* of Salt Lake City, for defendant.

STRAUP, J.

The plaintiff filed a petition in this court for a writ of certiorari to review proceedings in a cause before the dis-

trict court wherein L. M. Hickok and wife were plaintiffs and Sammis the defendant. The substance of the petition is that Hickok and wife brought an action against Sammis in the district court and by their complaint alleged that they were entitled to the possession of certain furniture and other wares and goods and fixtures in a hotel in Salt Lake City, and also were entitled to the possession of the hotel, growing out of a contract entered into by and between the Hickoks and Sammis by the terms of which the Hickoks agreed to sell the furniture, fixtures, etc., to Sammis upon the payment by him to them of the purchase price agreed upon, under which contract Sammis was given possession of the furniture, etc., and of the hotel, but had failed to comply with the terms of the contract and make the payments as therein specified, and that upon the filing of the complaint and on notice and a hearing a receiver pending the action was appointed by the court, who took charge of the property. It is further set forth that after Sammis filed his answer and counterclaim to the complaint the court, on motion of the Hickoks and upon service thereof and a hearing, but without authority and in excess of jurisdiction and over the objections of Sammis, discharged the receiver and turned the property over to the Hickoks upon their giving a surety bond in the sum of $2,500 for the use and benefit of Sammis. Upon the filing of the petition we granted the writ. In response thereto the district court answered the petition and certified and transmitted the record of the case to us.

The issues presented by the complaint and the answer and counterclaim in the cause had not yet been determined. The record as transmitted shows the pleadings in the cause, minute entries of the court, and a part of the testimony given by Sammis on the hearing for the appointment of a receiver. As disclosed by the pleadings in the cause and the testimony so given, the situation is this: On January 19, 1926, the Hickoks were the owners and in possession of certain furniture and fixtures in a hotel in Salt Lake City upon which hotel they had a five-year lease and then

were operating and for some time theretofore had operated and conducted the hotel. On January 19, 1926, the Hickoks entered into an agreement with Sammis by the terms of which they agreed to sell to Sammis the furniture and fixtures, etc., and the good will of the business, in consideration of $18,000, of which purchase price Sammis made a down payment of $4,500, and agreed to pay the balance in monthly installments of $200, and also agreed to pay the rent of the hotel, the lease on which was assigned to Sammis by the Hickoks, but the Hickoks, so far as the lessor was concerned, still remaining liable on the lease for the payment of the rentals, and thereupon Sammis was put in possession of the furniture and fixtures, etc., and of the hotel, and ran and operated the business. The terms of the contract, among other things, provided that title to the furniture and fixtures should not pass until the full purchase price had been paid. Sammis agreed also to pay the taxes upon the furniture and fixtures. After Sammis had conducted the hotel for a period of about four months, or to May 15, 1926, he defaulted in payments of the rent and of the installments and of the taxes, amounting to $450 on the stallments, $725 rentals, and $96.90 taxes. It further was alleged that on May 15, 1926, the Hickoks and Sammis thereupon entered into another contract by the terms of which the prior contract of January 19th was annulled and canceled and the contract of May 15th made in lieu thereof. By the terms of the second contract the Hickoks, on a consideration of the sum of $14,340 to be paid to them, agreed to sell and make over to Sammis the furniture, fixtures, etc., in the hotel, such sum to be paid in monthly installments of $150 each, but the purchase price to be paid in full on or before January, 1931, Sammis also to pay the rentals of the building and all taxes on the furniture, fixtures, etc. That contract also provided that the title to the property should not pass to Sammis until the full purchase price was paid and that upon his default in making any of the payments of the installments or of the rentals, or of the taxes, Sammis, on demand of

the Hickoks, was to yield up and surrender immediate possession to the Hickoks of the property and of the hotel. Then it is further alleged that Sammis defaulted in making such payments, and that he had failed to pay the rent for the month of July, then past due and owing, and had also failed to pay the installments past due and owing for that month, and had also failed to pay the taxes past due and owing on the property, and that written notice was served on Sammis and demand made for the possession of the property and of the hotel, which Sammis refused to give. The Hickoks also in their complaint prayed for the appointment of a receiver, and upon their application, and upon notice and a hearing, a receiver was appointed to take charge of the property and of the hotel. The receiver qualified and took charge of it and operated the hotel. That was on July 19, 1926. At the hearing for the appointment of a receiver Sammis was called as a witness, and in part testified that he told the landlord that he (Sammis) was unable to carry out the terms of the contract with the Hickoks and was unable to make the payments as by the contract specified, and that unless "things picked up" he would be required to turn the property back; that the landlord advised him to do so, and that Sammis stated he would do so; and further testified that he asserted to others that unless "things picked up" he would be unable to perform the conditions of the contract and make the payments as therein specified.

After the receiver was appointed and had taken possession of the premises, Sammis filed an answer and counterclaim to the complaint of the Hickoks, wherein he admitted the execution of the contract of May 15, 1926, a copy of which was attached to the complaint of the Hickoks. However, in the counterclaim it was alleged that when the first contract was entered into in January, 1926, the Hickoks represented to him that, for a period of five years immediately preceding, the average monthly income of the hotel was $1,050, which representation was false and fraudulent and made with the intent to mislead and deceive Sam-

mis, but on his reliance thereon he entered into the first contract and made the down payment of $4,500 and went into possession of the property and of the hotel; that he "had agreed to pay as the purchase price for the furniture and fixtures and of the hotel business the sum of $18,000, but that the furniture and fixtures were not worth to exceed $9,000;" that he operated the hotel from January until about May 15, 1926, when he offered to rescind the contract of January 19th and to restore the property to the Hickoks, provided they would repay him all moneys paid by him on the contract, but to do so the Hickoks refused; that thereupon the contract of May 15th was made and entered into as alleged by the Hickoks in their complaint; that when the second contract was made and entered into the Hickoks again represented and declared that for a period of five years preceding January, 1926, the average monthly income from the hotel business was $1,023, and that Sammis did not know, and was unable to find out, the truth respecting the value of the business under the operation of the Hickoks until about July 25th, when he had access for the first time to the books of the Hickoks, and that by such books it was disclosed that during such five-year period the business had earned an average of only $960 per month and no more, and that Sammis "was informed and believed" that the business done by the Hickoks during such period "was less than as shown by said books." Then Sammis alleged in his counterclaim that he "has been damaged in the sum of $10,000 by the making of such contracts so induced as aforesaid by the false and fraudulent statements and conduct of the plaintiffs" and demanded judgment against the plaintiffs in the sum of $10,000. No further or additional allegations are contained in the counterclaim respecting the alleged damages. The answer and counterclaim were filed August 5, 1926. Thereafter the Hickoks served notice on Sammis that on a stated day they would move for a discharge of the receiver upon the grounds that by the answer and counterclaim seeking to recover damages against the Hickoks the contract of May 15, 1926, was rescinded, and that,

therefore, Sammis no longer could make any just claim against the property in the custody of the receiver; that by the answer and counterclaim it was admitted that the Hickoks were the owners and entitled to the possession of the property and of the hotel; that the expenses incident to a continuation of the receivership wholly fell upon the Hickoks; and that the receiver also was anxious to be relieved of further duties, in connection with the operation of the hotel. At the appointed time counsel for both parties appeared before the court. All we have as to what then took place are the minutes of the court, which show that the motion came on regularly for hearing, naming counsel who appeared for the Hickoks and who for Sammis, and that the motion was argued by respective counsel and submitted and by the court taken under advisement till August 9, 1926, at which time further hearing and further arguments were had on the motion and the matter submitted, and that thereupon the court, being sufficiently advised in the premises, ordered that, on the Hickoks furnishing a surety bond in the sum of $2,500, and the receiver filing his report as required by law, the personal and all other property held by the receiver be turned over to the Hickoks and the cause continued for trial on the merits.

Although it is alleged in the petition for the writ that the court discharged the receiver and turned the property over to the Hickoks against and over the objections of Sammis, yet that, by the answer to the petition, is denied. A review of the record does not show that Sammis filed or made any objections to the discharge of the receiver or turning the property over to the Hickoks, except as may be inferred from the minutes of the court that the motion came on regularly for hearing and was argued by counsel for the respective parties and was submitted. The order discharging the receiver and turning the property over to the Hickoks was made August 12, 1926. On the next day the receiver filed his report of his doings in the premises, which report was approved by the court, and the receiver discharged August 13, 1926. On August 14, 1926, the

Hickoks filed a special and general demurrer to the answer and counterclaim of Sammis, and also a motion for judgment on the pleadings.

It was at this stage of the proceedings, and before any ruling on the demurrers or on the motion, that Sammis applied to this court for the writ alleging that the district court in discharging the receiver and in ordering the property to be turned over to the Hickoks exceeded its jurisdiction, and prayed that such ruling and orders be annulled. In response to the writ the district court, on August 24, 1926, filed a motion to quash the writ and a demurrer to the petition. On August 31, 1926, after the writ was issued and served and the district court had filed its motion to quash and demurrers in this court, Sammis, in the court below, filed an amendement to his answer and counterclaim in the cause in the court below, wherein he denied that the Hickoks were the owners and entitled to the possession of the property in question and alleged that he lawfully was in possession of the property from January 19, 1926, until he was compelled to yield possession to the receiver on July 19,1926, and that he "has and claims the right to hold possession of said property, and that he has and claims a lien on said property in the hands of said receiver pending the final adjudication and determination of the rights of the parties in and to said property, for the payment and protection of any rights in and to said property, or to the payment of damages, which may be finally adjudicated in his favor," and further alleged as he was informed and believed that the Hickoks were insolvent and in such financial condition that they were unable to respond in damages or to pay any substantial sum of money to Sammis, if judgment be awarded to him, and that unless the court kept and retained possession of the property or ordered possession thereof to Sammis pending final determination, Sammis would be deprived of substantial rights and all security accrued to him by reason of the premises. So far as the pleadings and the record transmitted to us are concerned no such claim or issue was presented to the district court when the order of discharge of the re-

ceiver and turning the property over to the Hickoks was made. What, if anything, was argued to the court in such respect on the motion to discharge the receiver is not disclosed by the record.

It, of course, is conceded that the review involves questions, not whether the court merely erred even to the prejudice of the petitioner in discharging the receiver and turning the property over to the Hickoks, but whether in so doing the court acted beyond or in excess of jurisdiction. It in effect is contended by the petitioner that the court (1) was not authorized to discharge the receiver, and (2) that, though the court was authorized to do so, nevertheless it was not authorized, pending the action, to turn the property in litigation over to the Hickoks, for the reasons that (a) the only way such a result could be accomplished was by a proceeding in claim and delivery and by giving a bond or undertaking in double the value of the property claimed, and affording the petitioner an opportunity to give a counter bond or undertaking and retain the possession of the property until the final determination of ownership and possession, and (b) that by reason of the issues presented by the pleadings, and especially by the counterclaim, and because of § 5178, c. 5, Comp. Laws Utah 1917, Sammis had a lien on the property and could not lawfully be divested of it until such lien was satisfied and discharged. It ought to require clear and manifest want of jurisdiction to annul or arrest intermediate and interlocutory orders of a court relating to the progress of a cause, or to the protection of property in litigation pendente lite, and even then not if the party aggrieved has the right of an appeal whereby the rulings complained of may be reviewed and his rights protected. Comp. Laws Utah 1917, § 7377; *Malloy* v. *Keel* (Idaho) 250 P. 389.

We think it clear enough that the court had jurisdiction to entertain proceedings to discharge the receiver pendente lite, and to discharge him when in the judgment and discre-

tion of the court the exigencies or necessities for his appointment in the first instance ceased to exist, and that when such was made to appear it became the duty of the court on proper motion or application therefor to do so. Enough is here made to appear that the court was authorized to hear and determine the motion to discharge the receiver. Whether the court erred in discharging him we express no opinion. That is not now before us. Having discharged the receiver, was it then within the power or discretion of the court, pending further proceedings in the cause, to put the Hickoks in possession of the property and of the hotel upon their giving a surety bond or undertaking? Again, it is not now the question whether the court under all the circumstances ought to have made such an order, or whether the surety bond required to be given ought to have been for a less or greater amount, but whether the court had power to entertain such an application and hear and determine it. It is not our purpose now to give effect to the pleadings or to determine whether the answer and counterclaim tendered a sufficient defense, or whether upon the pleadings the Hickoks were or were not entitled to judgment. Such matters are still pending before the court undetermined, and it is not our purpose, nor is it our province, to indicate or direct the court below how such matters ought to be ruled or decided. Whatever reference may be made by us to the pleadings in the court below are made only with respect to the matter in hand to ascertain whether the court had power to protect the property in litigation pendente lite, and whether by the pleadings and the testimony then before the court a sufficient prima facie showing was made authorizing the court to interfere and make some temporary disposition of the custody of the property. So viewing the matter, it appears that the execution and terms of the contract of May, 1926, by which the rights and obligations of the parties were fixed, are all admitted. Therein the Hickoks were recognized to be the owners of the property until the purchase price was fully paid, and upon default of the payment of any of the installments, or of the rent,

or of the taxes entitled to the immediate possession of the property, including the hotel. That Sammis was in default in making such payments was testified to by him at the hearing when the receiver was appointed, and that he was unable to perform his part of the contract and meet the payments therein specified, and intended to surrender up and deliver the property back, are all inferable from his testimony. Certainly, if, as alleged by the Hickoks in their complaint, and as the court may have inferred from Sammis' testimony, he was unable to carry out his contract and meet the payments, but intended to retain possession until he was evicted, and thereby appropriate the proceeds of the business to his own use without applying any of them on the payments required to be made by him on his contract, equity would not aid him to do so to the injury of the Hickoks. Thus, when the receiver was discharged, the court was required either to turn the property over to Sammis or to the Hickoks. To have placed it in the custody of another the court might as well have retained its receiver and left the property in his custody, which probably would have been the better thing to have done instead of discharging the receiver, and, if the receiver did not desire longer to act, as was averred, to have appointed another. The court, having discharged the receiver, may well have reached the conclusion that the property and the hotel business would better be preserved and looked after by the Hickoks, to whom but a small part of the purchase price had been paid, and who confessedly had a greater interest in the property than had Sammis, if, because of his default, he had any.

It may be conceded that, where a receiver appointed pendente lite and in the course of litigation, and before the issues are heard and determined, is discharged, the property so in the possession and custody of the receiver ordinarily should be turned back to him from whose custody it was taken. But that does not necessarily ■ follow. The circumstances and exigencies of the particular case must control that. Nor does it follow that

the only remedy open to the Hickoks to get possession of the property pendente lite was by and through an action of claim and delivery. Here the properties include not only furniture, goods, and other chattels, but fixtures, and especially interests in a five-year lease on the building, and rights to the possession of it and to the hotel business itself, all included in the litigation, which may well have been regarded by the court as of paramount importance, and rights with respect to which could not be ascertained or determined in an action of claim and delivery, and which, if they were not severable, yet were necessary parts of the contract and directly involved in the transaction and in the cause declared by the Hickoks by their complaint, as well as by the counterclaim of Sammis. Thus may we dismiss, as we do, the contention of the petitioner that the only remedy open to the Hickoks to get possession of the property was by or through claim and delivery.

Now, as to the further contention of the petitioner that the court, by turning the property and possession of the hotel over to the Hickoks, deprived him of his lien and left him unsecured for whatever damages he might recover on his counterclaim. In the first place, the record does not disclose that the petitioner by any pleading or otherwise contended or made any such claim to the court below at any time on or before the hearing to discharge the receiver and turn the property over to the Hickoks, or before such orders in the premises were made, or before the writ herein was applied for and granted. It is the general rule that prohibition will not issue to arrest proceedings unless the attention of the court whose proceedings are sought to be arrested was called to the alleged excess of jurisdiction. *Baughman* v. *Superior Court*, 72 Cal. 572, 14 P. 207. We think the same rule applies in certiorari to annul an order or proceeding where the alleged excess or want of jurisdiction was not called to the attention of the court whose orders or proceedings are sought to be annulled and vacated. It was not until after the orders

of the court below were made and after the writ
herein applied for was granted and after the district
court in response thereto demurred to the petition
and moved to quash the writ that the petitioner filed in
the court below his amendment to his counterclaim wherein
he, for the first time, so far as disclosed by the record, made
any claim of lien. But further as to that. Though such
claim of lien by pleadings or otherwise had properly been
made and called to the attention of the court before the
rulings complained of were made, still it is not at all clear
that by reason of the counterclaim the petitioner brought
himself within the provisions of the statute providing for
a lien. It is not now our purpose, nor are we called upon
at this time, to construe the statute in question, except to
call attention to but one feature of it. The statute deals
with the subject of a breach of warranty by the seller in
the sale of goods, and in case of such breach gives to the
buyer, among other remedies, a right to—

"rescind the contract to sell or the sale and refuse to receive the goods
or if the goods have already been received, return them or offer to
return them to the seller and recover the price or any part thereof
which has been paid."

And:

"Where the buyer is entitled to rescind the sale and elects to do so,
if the seller refuses to accept an offer of the buyer to return the goods,
the buyer shall thereafter be deemed to hold the goods as bailee for
the seller, but subject to a lien to secure the repayment of any portion
of the price which has been paid, and with the remedies for the en-
forcement of such lien allowed to an unpaid seller by section 5162."
Section 5178.

The statute also defines an express warranty to be "any
affirmation of fact or any promise by the seller relating
to the goods" (section 5121), if the natural tendency of
such affirmation or promise is to induce the buyer to pur-
chase the goods, and if the buyer purchases the goods rely-
ing thereon, and that no affirmation of the value of the

goods shall be considered as a warranty and an implied warranty that the seller has the right to sell the goods; that the buyer shall have and enjoy quiet possession of the goods as against any lawful claims existing at the time of the sale; and that the goods shall be free at the time of the sale from any charge or incumbrance in favor of any third person not declared or known to the buyer before or at the time when the contract or sale is made. Thus, to give the buyer a lien, there must be a breach of warranty, either express or implied, as defined by the statute; he must be entitled to rescind the sale and elect to do so and restore the goods, or offer to do so; and if the seller refuses to accept them, the buyer is given "a lien to secure the repayment of any portion of the price which has been paid." Here, the gist of the counterclaim is that the Hickoks falsely and fraudulently represented that the monthly income of the business of the hotel for five years immediately prior to entering into the contract of sale was $1,032, when by the books of the Hickoks such monthly income was only $960, and that by reason of such representation relied on by Sammis he was damaged in the sum of $10,000. We do not say that such alleged false representations are not actionable, but it seems clear that they did not constitute, within the meaning of the statute, a warranty, nor by the petitioner's averments and claim of damages does he seek to recover for the price which was paid by him, but for damages resulting from the alleged false and fraudulent representations which are not within the provisions of the statute giving the buyer a lien.

From these considerations it follows that the writ heretofore issued by us was improvidently issued, and that on this review the orders complained of are not beyond or in excess of jurisdiction and ought not on this hearing be annulled or vacated, and that the record transmitted to us should be remitted to the court below. Such is the order.

GIDEON, C. J., and THURMAN, FRICK, and CHERRY, JJ., concur.