# BATTLE CREEK BREAD WRAPPING MACH. CO.
## v. PARAMOUNT BAKING CO.

No. 5340. Decided December 31, 1934.   (39 P. [2d] 323.)

Petition for rehearing denied, September 27, 1935.

*Allen T. Sanford,* of Salt Lake City, for appellant.

*John D. Rice,* of Salt Lake City, for respondent.

PRATT, District Judge.

Upon a title retaining contract, the plaintiff machine company sold and delivered to the defendant baking company a bread-wrapping machine and a bread-slicing machine. The machines are independent of each other in operation. On the face of the contract they are listed as follows:

```
One model Duplex Wrapping Machine ..................$4,000.00
One model Extra Intake .............................   250.00
One model Simplex Slicer (rebuilt) .................. 1,950.00
                                                     ----------
    Total ..........................................$6,200.00
    Following this total appear these words:
Less allowance—for Model E ..........................$  600.00
                                                     ----------
    Total ..........................................$5,600.00
```

The terms of payment are $1,400 cash on installation; and $4,200 plus 6 per cent interest in twelve equal monthly installments represented by notes. The extra intake was returned and credit given therefor. It is not involved in this case.

The wrapping machine was replaced by another of the same kind. There is no controversy between the parties as to the amount paid upon the contract nor as to the amount remaining unpaid.

The defendant paid a sum in excess of the price of the slicing machine, then refused to pay more on the ground that the wrapping machine would not properly wrap the loaves of bread. Treating the contract as divisible, it notified the plaintiff that it rescinded as to the wrapping machine, demanded the return of payments in excess of the price of the slicing machine, and stated that it held the wrapping machine subject to plaintiff's order upon return of the excess payments.

The plaintiff, on the other hand, claimed that the wrapping machine was not defective and would operate under proper management and cleaning; contended that defendant had breached its contract by default in payments; and, treating the contract as indivisible, instituted an action in replevin for both machines. Upon a bond plaintiff obtained possession of both machines; upon a redelivery bond defendant recovered possession of the slicing machine. For the purposes of the bonds, the two machines were valued at $4,500, and the slicing machine alone was valued at $1,500.

The lower court decided in favor of the plaintiff, and directed a return of both machines, or, if that were impossible, a judgment in the sum of $4,500 as their value. Defendant appeals.

In view of the possession of the wrapping machine by the plaintiff, its value was an immaterial matter; and, if the lower court were right in finding for the plaintiff, the judgment should have been merely for the return of the wrapping machine without regard to its value, and a judgment for the return of the slicing machine or its value, if not returned. *General Motors Acceptance Corporation* v. *Lund*, 60 Utah 247, 208 P. 502.

Considerable testimony was offered in support of defendant's contention that the wrapping machine was defective. Upon objection of plaintiff, the lower court rules out some of the evidence pertaining to the breaking of parts,

the number of defective wraps—cripples as they ■
were called— the action of the machine the last night,
and similar testimony. These rulings we believe were er-
roneous. The lower court was apparently of the opinion
that they were the result of an improper adjustment of the
machine by defendant's employees. We doubt seriously that
such evidence was so limited in its probative value. The
defendant should have been permitted to submit such testi-
mony on the theory, that it tended to show that frequent
breaks, improper wrapping, and overheating defeated the
very purpose of the machine, to wit, a rapid disposal of
loaves of bread—some 2,000 or more per hour.

Was the contract divisible? We think it was. The ma-
chines were independent of each other in operation. The
slicing machine could be used with any wrapping machine
or with hand wrapping; the wrapping machine could
be used with either sliced or nonsliced bread. In the ■
contract there is a guaranty that the machine will
wrap uniform loaves within its range and capacity. This
clearly refers to the wrapping machine and not the slicing
machine. There are many elements that enter into the
determination of whether or not a contract is divisible, but,
so far as the machines in this case are concerned, the prin-
cipal element is that of unity: Does one depend upon the
other to function? If two parts of one machine, the contract
is not severable; if independent of each other, that is, two
separate machines, the contract is severable. 4 A. L. R.
1442, note.

Now as to warranties: Defendant claims an implied war-
ranty of fitness for its purposes. Plaintiff denies such a
warranty; contends that it was the purchase of a specified
known patented article; and that it was purchased after
seeing it in operation. It should be kept in mind that the
machine in controversy is the replacement, not the one seen
in action by defendant's representative.

The fact that an article has a trade-name does not negative an implied warranty of fitness for a particular purpose, where it is purchased, not by name, but for a particular purpose and supplied for that purpose. 55 C. J. 757. In the present contract the machine was ordered by the name of "Duplex Wrapping Machine." Had the contract remained silent as to warranties, there would have been some justification for the conclusion that it was a purchase of a specified known article, but the contract contains this clause: "Standard models are guaranteed to wrap uniform loaves or packages within range and capacity for which machine is designed, provided machine is kept in proper adjustment, operated with competent help, and not speeded beyond recommendations of vendor."

The parties apparently recognized that the use of the trade-name of the machine was purely a matter of convenience in designation. These facts, considered along with the fact that the replacement arose out of complaints of defectiveness in the first machine, are rather substantial evidence of the fact that no reliance was placed upon the name of the article, but rather that the parties were concerned with its fitness to accomplish its purpose.

The contract contains another warranty: A guaranty of replacements of parts defective in workmanship or material. Plaintiff contends such express warranty excludes an implied warranty of fitness. Such conclusion does not necessarily follow. The two are not inconsistent. It cannot be said that by expressly agreeing to one it was contemplated that the other was not to apply. In this particular contract there is unquestionable evidence that a warranty of fitness was not excluded. The first machine is expressly warranted to wrap loaves of bread. If the express warranty of parts applies to the substituted machine, then of necessity the express warranty of fitness applies to the substituted machine.

However, we are of the opinion that there was an implied warranty of fitness as to the substituted machine. It is hard to believe otherwise when replacement arises out of defects in the machine replaced.

Defendant offered to prove by conversations had at the time of the negotiations for purchase that it was intended to apply the allowance of $600 for the model E machine turned in upon the price of the bread slicer. This evidence was ruled out on the theory that it varied ▪ the terms of a written instrument. We think the ruling correct. The contract clearly shows an application upon the total price of the two machines. Its terms cannot be modified by any different showing. It would follow then that, if defendant is entitled to recover for payments in excess of the price of the slicer, he is entitled to recover for all in excess of $1,950, whether they take the form of cash payments or a value of an article turned in on account.

Defendant acquired possession of the machines rightfully and under contract. Plaintiff's success upon its action of claim and delivery is dependent upon the question of whether or not plaintiff is entitled to the immediate possession of those machines. Defendant, in order to ▪▪ meet that claim of right to immediate possession in the plaintiff, may set up any defense which, if true, will show either that such right does not exist or, if the right to possession exists, it is contingent upon some condition arising out of the transaction between the parties yet to occur. Such, apparently, is the defense the defendant seeks to arise in this case. Its answer, in effect, says that as to the slicing machine the plaintiff has no right to its possession by reason of the fact that the machine has been paid for in full; and that as to the wrapping machine plaintiff's right to possession is not immediate, but is contingent upon the return to the defendant of the amounts paid to the plaintiff in excess of the price of the slicing machine. If the court's decision were limited to a determination that plain-

tiff was not entitled to immediate possession of the machines, complete justice would not be accomplished. Another suit would be required to satisfy defendant's rights arising out of the same transaction. To avoid such multiplicity of suits, the courts permit the defendant in replevin or claim and delivery actions to set up facts adverse to the right of possession in the plaintiff, and to seek affirmative relief upon those facts. Such affirmative relief may consist of a claim or claims in the nature of a lien upon the property the plaintiff seeks to recover. In the present case, defendant seeks such affirmative relief by its counterclaim. It should have been permitted to present evidence in support thereof. *Westminster Investment Co.* v. *McCurtain,* 39 Utah 544, 118 P. 564; *Sammis* v. *Mark,* 69 Utah 26, 252 P. 270.

Counsel for defendant assigns numerous errors based upon rulings of the lower court rejecting testimony offered on behalf of the defendant. Some of these rulings we have already discussed. So far as the rulings pertain to the rejection of evidence by reason of the fact that the lower court adopted a theory of the case different from that expressed in this opinion, it is unnecessary to say more. Some of the rulings rejected answers which clearly were or would have been statements of facts witnessed or experienced, such as the ruling rejecting testimony as to the amount of paper wasted by reason of rewraps necessary, or as to the number of cripples per day produced by the machine. These were not matters of opinion or conclusions. Those rulings of the court rejecting testimony such as the average cripples produced by other wrapping machines, or comparisons between packages of other bakeries and those of the machine involved, or testimony going to the details of defects in the first machine, were all proper. The defendant has assigned errors based upon the refusal of the court to accept testimony from some of defendant's witnesses as expert testimony. Having in mind the fact that the lower court tried the case upon a theory different from that set out in this decision, we are a little bit uncertain as to

whether or not the rulings made were the result of the adoption of that theory, or were the result of a conclusion reached by the lower court that the witnesses were not experts. If the lower court's rulings were the result of a conclusion that the witnesses were not experts, we are bound by that court's decision, unless it is shown to be an abuse of his discretion. *Bryant* v. *Bingham Stage Line,* 60 Utah 299, 208 P. 541. However, in passing it may be well to say that it should be kept in mind that a man may be sufficiently qualified to testify as a mechanical expert without actually being an expert in the operation of the particular machine about which he testifies. By reason of his familiarity with the principles of mechanics, he may be able to express an opinion as to the cause of breaks or overheating, or unnecessary stress, as the case may be, even though he may not have had anything to do with the machine about which he testifies prior to the time he experienced the defects which form the basis for his conclusion or opinion. So far as this case is concerned, we are inclined to believe that upon a retrial under the law we have herein set out these alleged errors will not again arise.

The assignments of error attacking the lower court's findings of fact need no discussion, as they are in effect covered by what we have previously said.

The plaintiff's contention that defendant has waived its right to rescind for breach of warranty by reason of use of the wrapping machine after having notified plaintiff of the rescission is not sufficiently supported by evidence for us to consider it at this time. Nothing is said as to the kind of use, and the time or extent of use is indefinite; in fact, the testimony upon this point is rather meager, and consists almost entirely of testimony by one witness to the effect that the machine was in use some eight weeks from the date of its installation and by another witness to the effect that some three weeks' time elapsed, during a part of which time an expert from plaintiff's factory

76

was endeavoring to make the wrapper operate. It does not appear that the parties tried the case upon any theory of waiver. If it is a material fact in the case, it may be properly developed upon retrial.

We believe the lower court's rulings were prejudicial to the defendant, and, as considerable evidence was excluded by those rulings, the defendant is entitled to a new trial.

The case is remanded to the lower court, with directions to grant a new trial; costs to appellant.

STRAUP, C. J., and ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.

MOFFAT, J., being disqualified, did not participate herein.