UNIVERSAL C. I. T. CREDIT CORPORATION, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, FRANCISCO TORRES AGUIAR, JUDGE, Respondent; JOSÉ M. GATELL, Intervener.

No. 2035. Argued March 1, 1954.—Decided December 8, 1954

*Jorge M. Morales* and *Ramón L. Nevares* for petitioner. *Francisco Ponsa Feliú, Luis Blanco Lugo* and *Isaías Rodríguez Moreno* for intervener, defendant in the main action.

MR. JUSTICE MARRERO delivered the opinion of the Court.

José M. Gatell acquired from the Hull-Dobbs Co. of Puerto Rico a "Ford V8 Panel Delivery" automobile, by a conditional sales contract executed on May 29, 1952, which contract was assigned by the vendor to the petitioner herein, Universal C. I. T. Credit Corporation.[1] Inasmuch as Gatell failed to pay on time some of the installments due, the assignee filed in the District Court of Puerto Rico, San Juan Part, on February 20, 1953, an affidavit in which, after setting forth the execution of the contract and the assignment thereof by the vendor, as well as defendant's failure to pay the installments corresponding to the months of December 1952, and of January and February 1953, and that according to the contract the whole deferred price became due and that the unpaid balance was $1,488.27, it moved the Court for the repossession of the vehicle in question. A copy of the contract subscribed by the parties was attached to said affidavit.[2] It simultaneously prayed for the security of the effectiveness of the judgment that might be rendered and the District Court so ordered, upon the giving of a bond in the amount of $1,500, which was timely furnished. Later, on petition of the assignee itself, the District Court transferred the proceeding to the Superior Court of Puerto Rico, San Juan Part.

After the purchaser was summoned and the record sent up to the Superior Court, the former answered admitting the

---

[1] Hereinafter we shall refer to it as the assignee or Universal.

[2] In the conditional sales contract the following clauses appear among others:

"3. The purchaser has received from the vendor, on this day, the vehicle which has been examined and tried by the purchasers and accepted to his complete satisfaction.

"(a) The full title of the vehicle shall remain in the vendor until after the purchaser has paid the total amount of the installments stipulated. ...

"(f) Should the purchaser fail to pay any of the installments stipulated in this contract ... then the vendor may take possession of the vehicle ...

"(l) This contract may be assigned or conveyed by the vendor with or without notice to the purchaser."

assignment of the contract, denying the breach thereof and alleging as a defense that he has not paid the installments as agreed because from the date the vehicle, object of the contract, was delivered to him, it has been out of use most of the time due to a defect in its engine which has never been repaired by the plaintiff's mechanics and employees. He alleged as special defenses that when the vehicle was delivered he noticed that it had certain defects in the mechanism, of which he immediately notified the vendor, and the latter bound itself to fix them or to return to him the money paid or else deliver him a new vehicle in perfect condition, in case the aforesaid defects could not be repaired; that he took the vehicle more than eight times to the vendor's repair shop and the mechanics therein were unable to repair it, informing him that repair was impossible; that he then demanded the return of his money or another vehicle and plaintiff (sic)[3] refused to do so; and that on the day that the defendant's vehicle was attached to secure the effectiveness of the judgment, the vehicle was at plaintiff's repair shop. By way of "counter-claim" he likewise alleged that the plaintiff, against whom the counterclaim was filed, has not complied with the obliga- tions assumed under the contract thereby causing damages to defendant in the amount of $3,000. He moved for the resolution of the conditional sales contract, that plaintiff be ordered to surrender and return to the defendant the price and the installments paid by him, and that plaintiff be ordered to award him the amount of $3,000 for damages, plus interest, costs and attorney's fees.

Universal answered the counterclaim alleging that the facts set forth therein do not constitute a cause of action,

---

[3] Upon referring to the "plaintiff" we do not exactly know whether de- fendant wishes to refer to the assignee, who was the entity resquesting the repossession of the vehicle, or to the assignor, who sold it to him and who according to defendant had made him the promises referred to in his answer.

and denied them. It also moved that the aforesaid counter-claim be stricken from defendant's answer because:

"(a) Said 'cross complaint'[4] is merely a claim for damages caused to Mr. Gatell by Hull-Dobbs Company of Puerto Rico, who is not a party to the action, on the ground that said Hull-Dobbs Company of Puerto Rico has not complied with a contract or agreement with Mr. Gatell, and such contract or agreement has nothing to do with the conditional sales contract involved in the action for repossession, all of which appears from the allegations of the cross complaint.

"(b) Because an action for damages cannot be included within a summary proceeding for the Repossession of Chattels filed according to the provisions of the Conditional Sales Act.

"(c) That inasmuch as said counterclaim was directed against the Hull-Dobbs Company of Puerto Rico and inasmuch as the Hull-Dobbs Company of Puerto Rico is not a party to the suit, plaintiff Universal C.I.T. Credit Corporation is not liable for the actions and contracts existing between Mr. Gatell and Hull-Dobbs Co. of Puerto Rico to which contracts petitioner herein was not a party and therefore it is not liable to Mr. Gatell in the sum of $3,000 which he claims for the breach of contract on the part of Hull-Dobbs Co. of Puerto Rico, which contract is not the one acquired by the petitioner from said Hull-Dobbs Co. of Puerto Rico, nor in which the petitioner was a party.

"(d) That insofar as the petitioner Universal C.I.T. Credit Corporation is concerned, Mr. Gatell was precluded from making any such claims by virtue of the provisions of the conditional sales contract itself, which he voluntarily signed and the authenticity of which he expressly admitted."

The motion to strike filed by Universal was dismissed by virtue of a lengthy decision of the trial court dated July 24 of last year. In order to review said decisions we issued a writ of certiorari on petition of the assignee. The latter's contention is now that the trial court erred in concluding (1) that defendant's cross complaint could be litigated within a proceeding for repossession, since its allegations constitute

---

[4] The claim that appears in defendant's answer is indistinctly classified by the parties as a counterclaim or as a cross complaint. *Cf. The Juncos Central Co.* v. *Rodríguez*, 16 P.R.R. 286, 292.

on their face a cause of action against a person who was not a party to the suit, for damages arising from the breach of contracts wherein the petitioner is not a party nor are said contracts a part of the conditional sales contract which gave rise to the proceeding for repossession, thus making it liable for damages which it did not cause; and (2) that a claim for damages filed by the conditional purchaser against the petitioner could be litigated within an action for repossession of chattels filed according to the provisions of the Conditional Sales Act.

■ Petitioner as well as intervener Gatell place great emphasis on our decision in *Mattei & Co.* v. *Maldonado*, 70 P.R.R. 443. However, that case is clearly distinguishable. There, the litigants signed a conditional sales contract in connection with an electric cooler. When the purchaser failed to pay some of the installments on time, the vendor filed a proceeding for repossession. The purchaser answered in writing admitting that the plaintiff was owner of the said cooler, denying having purchased it and stating that the cooler delivered to him was not the one sold to him and that it was delivered with dents and had a price different from that stipulated and that, when he protested, the vendor told him that it would deduct the sum of $100 from the agreed price. After the proper hearing was held, the lower court rendered judgment dismissing the "complaint" and imposing costs and attorney's fees. The conditional vendor appealed to this Court. Upon deciding the case, we stated in the course of our opinion:

"The decisions are conflicting as to whether in an action of replevin brought by the vendor to recover the possession of a chattel sold on conditional sale, for breach of contract by the purchaser, the latter may raise the defense of patent or latent defects in the goods, or of breach of warranty on the part of the vendor. (Citations). The specific question involved herein has not been decided by this Court. Our Conditional Sales Act, No. 61 of 1916, is silent as to whether or not in an action to recover the possession to which we have already referred such

defense may be raised. However, if it were decided that being the proceeding to recover possession special and summary on raising a defense such as the one pleaded herein by the purchaser, the petition for repossession should be dismissed, very little or nothing would be gained by it. An order to that effect would leave the parties in the same situation as that in which they were before the affidavit was filed as required by § 6 for instituting the action to recover the possession and would compel them to bring one or more independent suits to decide any existing conflict between them. *We think, therefore, that since the parties are before the court and said court has jurisdiction over them and over the matter and that as the parties are given the opportunity to appear and be heard regarding their claims and rights, the better practice should be to determine within the very action for recovery of possession such claims or rights, rather than to confine itself to the single fact of whether or not there has been noncompliance with the contract of conditional sale by the purchaser and, therefore, whether the restitution sought lies.*" (Italics ours).

However, the situation in the instant case is completely different. Here we are dealing not only with defenses raised by the purchaser on the basis of latent defects of the thing but also with affirmative claims which can not be established within this special proceeding and which are also based on promises made to the purchaser by the original vendor.

 A conditional sales contract, such as the one herein, is not a negotiable instrument. 47 Am. Jur. 139, § 929. However, it may be assigned to a third party. The contract in issue could be so assigned by virtue of its own terms.[5] When a contract of this kind is assigned, the assignee is subrogated to the rights of the assignor and in turn assumes the obligations that the latter has contracted with the purchaser at the time of the assignment. That is to say, he accepts the instrument subject to the infirmities that the same may have and is liable for any warranties for which, by law or by the terms of the contract, the seller (assignor) is liable to

---

[5] See clause (1) of the conditional sale contract copied early in this opinion.

the purchaser up to the time the contract is assigned. *State Nat. Bank* v. *Cantrell,* 143 P.2d 592, 152 A.L.R. 1216; *Jegen* v. *Berger,* 77 C. A.2d 1, 174 P.2d 489; Bogert, *Uniform Laws Annotated,* Vol. 2A, p. 48; *op. cit., Cumulative Annual Pocket Part,* 1953, pp. 36, 37; *Parker* v. *Funk,* 197 Pac. 83. *Cf.* §§ 1374 and 1418 of the Civil Code, 1930 ed. By virtue of said assignment and of the rights involved therein, the assignee of said contract is authorized to file a proceeding for repossession. 78 C.J.S. 452; 47 Am. Jur. 138; 57 Yale L. J. 1414, 1417. Said proceeding is regulated by § 6 of Act No. 61 of April 13, 1916 (Sess. Laws, p. 123) as amended by Act No. 40 of June 27, 1925 (Sess. Laws, p. 246).

Section 6 *supra* provides in brief that whenever articles are sold upon the condition that the title thereto shall remain in the vendor or in any other person until the payment of the purchase price, the same may be retaken by the vendor or his successor in interest on the breach of the conditions of sale; that in such case they shall be retained by the vendor for a period of 30 days from the time of such retaking, and during such period the vendee, or his successor in interest, may comply with the terms of such contract and thereupon receive the property; that after the expiration of said period if the vendee or his successor in interest does not comply with the terms of the contract, the vendor, or his successor in interest may cause such articles to be sold at public auction and if such articles are not sold within 30 days after the expiration of such period, the vendee may recover from the vendor the amount paid on account, less a reasonable charge for the use of the articles. It also provides that to enable the conditional vendor to recover the goods, the object of the conditional sale contract, he shall file in the corresponding court an affidavit showing that the conditional vendee has failed to observe the terms of the contract and that the claim is made in good faith, attaching to such affidavit a copy of the contract containing a statement of its registration in the Conditional Sales Register. It also provides that upon receipt by the judge of the

affidavit and of the copy of the contract, he shall cite the parties to a hearing which shall be held within the 10 days following and that "if he deems the buyer has failed to comply with the condition, he shall issue an order directing the marshal to seize the claimed property which the marshal shall deliver to the conditional vendor, subject to the provisions of this Act."

The proceeding for repossession is a special proceeding instituted by filing a simple affidavit and not by virtue of an ordinary complaint. Furthermore, it is a summary proceeding not subject to the technicalities or delays which generally occur in ordinary civil suits. The purpose of the statute, undoubtedly, is that once the vendee fails to comply with the conditional sales contract, the vendor (or assignee) may recover summarily the chattel, the possession of which he had surrendered but title of which he had always retained. That was precisely the proceeding followed in the instant case by the assignee.

██ Although the purchaser—intervener herein—alleges that the conditional sales contract was not assigned to the petitioner on the same date of its execution but much later,[6] the defenses raised by said purchaser are not directed against the actions of the assignee itself, but rather against the actions and promises made by the assignor Hull-Dobbs Co. of Puerto Rico, possibly after having assigned the conditional sales contract. Although the assignee acquired the contract subject to the infirmities and liabilities existing at the time it was transferred, any subsequent promises made by the assignor (vendor) to the purchaser, Gatell, may in no way affect the rights of the assignee to recover through a proceeding for repossession any unliquidated money demanded by virtue of the contract. *Cf. North American Acceptance Corporation v. Bihlmeier*, 74 N. E. 2d 831; *Refrigeration Discount Corporation v. Chronis*, 117 Conn. 457; *Saranac Mach.*

---

[6] The assignee alleges that the contract was assigned to it on the same date of its execution.

*Co.* v. *Nants & Co.*, 51 S. W. 2d 479, 480; 6 C.J.S. 1161 and 1162, §§ 105 and 107; *First Acceptance Corp.* v. *Kennedy*, 95 F. Supp. 861, 872; *Apple* v. *Edwards*, 16 P. 2d 700, 87 A.L.R. 179; 44 Ill. L. Rev. (1949–50) p. 227.

To permit questions like the ones pleaded by the intervener to be raised, argued and decided within a proceeding for repossession filed by an assignee, would be tantamount to adulterating altogether said proceeding and to interpolating issues completely extraneous to the proceeding. The motion to strike filed by the assignee should have been sustained.[7]

Although the purchaser, intervener herein, may not raise such defenses within the proceeding for repossession, he is not entirely defenseless. Nothwithstanding the summary proceeding filed against him at present, he may file, if he so wishes, an independent action against the Hull-Dobbs Company in connection with the breach of the alleged promises which it made. Whether or not the assignee in the case at bar should appear as defendant in said suit is a matter which we must not anticipate.

The decision appealed from will be set aside and the case remanded to the Superior Court, San Juan Part, for further proceedings consistent with this opinion.

Mr. Chief Justice Snyder dissented.

---

Mr. Justice Belaval, dissenting.

Hull-Dobbs Co. of Puerto Rico sold an automobile to José M. Gatell under a conditional sales contract. The contract was subsequently assigned to the Universal C.I.T. Credit Corporation. It seems that Mr. Gatell failed to pay some of the installments under the conditional sales contract, and the assignee, Universal C.I.T. Corporation, filed in the Superior Court of Puerto Rico, San Juan Part, a proceeding for repossession of chattels, authorized by § 6 of Act No. 61 of April 13,

---

[7] Of course, our conclusion would differ if it were an ordinary action for collection of money, or an action to recover the possession of chattels, etc.

1916, (Sess. Laws, p. 123) as amended by Act No. 40 of June 27, 1925, (Sess. Laws, p. 246). The trial court summoned the parties to a hearing in order to determine the breach of the stipulations of the contract. Mr. Gatell appeared and pleaded the following special defenses and counterclaim:

"1. When defendant obtained from plaintiff the vehicle, object of the conditional sales contract, he noticed that it had certain defects in the mechanism, of which he immediately notified the conditional vendor, Hull-Dobbs Company of Puerto Rico.

"2. The conditional vendor, Hull-Dobbs Company of Puerto Rico, bound itself with defendant to repair the defects in mechanism and also to return the payments which he made upon obtaining the vehicle or deliver a new vehicle that would be in perfect condition, in case the defects could not be repaired.

"3. Defendant took the vehicle, object of the conditional sales contract, more than eight times to the repair shop of the conditional vendor, and the mechanics therein were unable to fix the defective condition and informed him that repair was impossible.

"4. The defendant then requested the delivery of his money or another vehicle, which plaintiff refused.

"5. On the day the defendant's vehicle was attached in order to secure the effectiveness of the judgment, the same was at plaintiff's repair shop.

"2. The plaintiff against whom the counterclaim is filed has not fulfilled the obligations assumed under the contract and personally with the defendant, causing him damages in the amount of $3,000.00."

He moved the trial court: (a) to order the resolution of the conditional sales contract, (b) to order the assignee to surrender and deliver to the purchaser the purchase price and the installments already paid by said purchaser, (c) to order the assignee to pay to purchaser the amount of $3,000 for damages plus interest, costs, and attorney's fees.

The assignee moved the Court to strike from the conditional purchaser's answer the aforesaid counterclaim on the following grounds:

"(a) Said 'cross complaint' is merely a claim for damages caused to Mr. Gatell by Hull-Dobbs Company of Puerto Rico, who is not a party to the action, on the ground that said Hull-Dobbs Company of Puerto Rico has not complied with a contract or agreement with Mr. Gatell, and such contract or agreement has nothing to do with the conditional sales contract involved in the action for repossession, all of which appears from the allegations of the cross complaint.

"(b) Because an action for damages cannot be included within a summary proceeding for the Repossession of Chattels filed according to the provisions of the Conditional Sales Act.

"(c) That inasmuch as said counterclaim was directed against the Hull-Dobbs Company of Puerto Rico and inasmuch as the Hull-Dobbs Company of Puerto Rico is not a party to the suit, plaintiff Universal C.I.T. Credit Corporation is not liable for the actions and contracts existing between Mr. Gatell and Hull-Dobbs Co. of Puerto Rico to which contracts petitioner herein was not a party and therefore it is not liable to Mr. Gatell in the sum of $3,000 which he claims for the breach of contract on the part of Hull-Dobbs Co. of Puerto Rico, which contract is not the one acquired by the petitioner from said Hull-Dobbs Co. of Puerto Rico, nor in which the petitioner was a party.

"(d) That insofar as the petitioner Universal C.I.T. Credit Corporation is concerned, Mr. Gatell was precluded from making any such claims by virtue of the provisions of the conditional sales contract itself, which he voluntarily signed and the authenticity of which he expressly admitted."

As may be seen, the assignee's position before the trial court was, (1) that the assignee of a conditional sales contract is not liable for the damages caused by the conditional vendor to the conditional purchaser for having sold a defective automobile; (2) that a cause of action for damages caused by the conditional vendor to the conditional vendee for having sold a defective automobile can not be litigated within the summary proceeding for repossession, authorized by the Conditional Sales Act of Puerto Rico; (3) that the conditional purchaser was precluded, by virtue of the waiver contained in the conditional sales contract itself, from filing any claim whatsoever

against the conditional vendor or his assignee, for the defect in mechanism of the automobile.

1. The invulnerability of an assignee's position under a conditional sales contract against the defenses of the conditional purchaser was originally based on the possible negotiability of the promissory notes which they signed together with the conditional sales contract. The first distinction established by the jurisprudence was that the conditional sales contract per se was not a negotiable instrument, pursuant to the provisions of the Negotiable Instruments Act adopted by the different states, and therefore, the assignee of said conditional sales contract was not a holder in due course, free from any defects in the title of prior parties, and free from the defenses available to former parties among themselves and able to enforce the payment of the instrument for the full amount thereof against all parties liable thereon. (See §§ 52, 53, 54, 55, 56, 57, and 58 of Act No. 17 of April 22, 1930 (Sess. Laws, p. 172), known as the "Uniform Negotiable Instruments Act" of Puerto Rico, identical in its context with that prevailing in the United States). The second distinction established by the authorities was that the notes signed jointly with the conditional sales contract were not negotiable instruments per se unless the complete text of conditions of the conditional sale appears in said promissory note, inasmuch as an instrument, to be negotiable "must be complete and regular upon its face" (§ 53 of our Act), that is, that the requirement arises from the instrument itself, but it was soon discovered that if the conditions of the conditional sale appeared in the promissory note, it was unquestionable that the assignee or the holder in due course would receive notice of the conditions under which the negotiable instrument had been issued and could not plead ignorance with regard to notice of any infirmity in the instrument or defect in the title of the person negotiating the same (§ 55 of our own Act). Therefore, the possibility of turning the

notes, issued together with the conditional sales contract, into negotiable instruments was discarded.

At present, it can be said with enough assurance that either in the case of (1) the assignment of the conditional sales contract alone, or (2) of a conditional sales contract with promissory notes representing the different installments jointly, the assignee of a conditional sales contract takes it subject to the defenses which the conditional purchaser would have for any breach of the contract by the conditional vendor. In the first case the doctrine has been established that the assignee assumes the same obligations—to avoid the use of that ugly phrase sanctioned by poor judicial taste, "stands in the shoes"—as the conditional vendor with regard to the breach of his obligations by the conditional vendor under the contract. In the second case the doctrine has been established that the conditional sales contract and the notes signed according to the different installments of said contract must be examined jointly, considering it as a single transaction between the same parties.

With the creation of the so-called finance companies, which are actually auxiliary agencies of the sales departments, it was attempted for some time to follow the theory that, since it was the case of two different organizations, the finance company which was the assignee, should not be subject to the claims which the conditional purchaser might have against the conditional vendor and assignor. Previous experience has established the theory of close relationship (too intimate to be a holder in due course), (identity of interest), by virtue of which the assignee finance company is subject to the same defenses which the conditional purchaser would have against the conditional vendor and assignor.

The adverse jurisprudence which takes shape as the institution of law becomes integrated is based sometimes on the variety of the statutes recognizing possessory actions for the recovery of chattels, on the confusion as to the negotiable or non-negotiable character of conditional sales contracts or the

notes subscribed jointly with such contracts, on the express waivers of the contracts which we shall hereinafter discuss, and occasionally on the purely personal attitude of the judges, which never constitutes a good reason at law, despite the pragmatic boastings of the realistic school.

As an initial index of the jurisprudential evolution of the doctrine establishing the right of the conditional purchaser to plead against the assignee all the defense which he might have against the conditional vendor and assignor, see: *First & Lumbermen's Nat. Bank of Chippewa Falls* v. *Buchholz,* 18 N. W. 2d 771, 774, 775 (*Youngdahl*) (1945) ; *State Nat. Bank of El Paso, Tex* v. *Cantrell,* 143 P. 2d 592, 594 (*Saddler*) (1943) ; *Taylor* v. *Atlas Security Co.,* 249 S. W. 746, 748 (*Bland*) (1923) ; *Palmer* v. *Associates Discount Corporation,* 124 F. 2d 225, 227 (*Miller*) (1941) ; *C.I.T. Corporation* v. *Emmons,* p. 663 (*Hamiter*) (1940) ; *Commercial Credit Co.* v. *Childs,* 137 S. W. 2d 260, 262 (*Humphreys*) (1940) ; *Mutual Finance Co.* v. *Martin,* 63 So. 2d 649, 652 (*Drew*) (1953) ; *Commercial Credit Corporation* v. *Orange County Machine Works et al.,* 214 P. 2d 819, 821 (*Edmonds*) (1950) ; *Public Nat. Bank & Trust Co.* v. *Fernández,* 121 N.Y.S. 2d 721, 724, 725, 726, 727 (*Schweitzer*) (1952) ; *Battle Creek B. Wrapping Mach. Co.* v. *Paramount B. Co.,* 39 P. 2d 323, 326 (*Pratt*) (1934).

2. Within a proceeding for claim and delivery of personal property (repossession) the conditional purchaser may plead, as one of his defenses against the assignee of the conditional vendor, any damages which he has sustained because of defective functioning or condition of the thing sold under the conditional sales contract. Although generally speaking, the statutes in force prior to the Uniform Conditional Sales Act, from which ours issues, had no provision as to the kind of defenses which a conditional purchaser could allege against the conditional vendor or his assignee, using as suppletory proceedings, the general provisions of the Codes of procedure, in our case, the Code of Civil Procedure of Puerto Rico, the

theory has been uniformly established that the conditional purchaser may plead against his conditional vendor or assignee all the defenses that he would have under an ordinary civil action, either cross complaints, counterclaims, claims in equities, or any other reasons whereby he should not surrender the thing bought. The best discussion regarding the use of the suppletory code provisions when the conditional sales statute is silent as to the kind of defenses that the conditional purchaser may plead is found in the cases of *Marks* v. *Frigidaire Sales Corporation*, 54 F. 2d 974, 975 (*Hitz*) (1931); *United States Hoffman Machinery Corporation* v. *Ebenstein*, 96 P. 2d 661, 663 (*Allen*) (1939); *Harrolds Motorcar Co.* v. *Gordon*, 221 N.Y.S. 486, 487 (*Gibbs*) (1927), where the general Code of civil procedure is applied as to the defenses, counterclaims and cross complaints in more or less the same terms as the provisions of §§ 110, 111, 112, 113, 114, and 115 of the Code of Civil Procedure of Puerto Rico. This with respect to the purely procedural aspect of the question. Thus, even assuming that the Rules of Civil Procedure of Puerto Rico were not applicable as a suppletory provision to the proceeding for repossession established by our Conditional Sales Act, we could but conclude that the Code of Civil Procedure of Puerto Rico would be the suppletory code provision for the repossession proceeding of our Conditional Sales Act.

As to the cause of action for damages, there is no question that any damages suffered by the purchaser from the breach of contract on the part of the conditional vendor, either by refusing to deliver the chattel sold or by delivering it unfit for a particular purpose, or by delivering another of inferior quality or price (latent defect of the thing) may be alleged by the conditional purchaser as a defense in order to achieve two purposes: (1) to be relieved from the obligation of paying the balance due under the conditional sales contract because the total amount of damages is higher than the unpaid balance, or (2) to obtain the reduction of the unpaid balance according to the numerical computation of the damages made

by the court: *Mercantile Trust Co.* v. *Roland,* 288 P. 300, 303, 304 (*Leach*) (1930); *Marks* v. *Frigidaire Sales Corporation, supra; Pump Co.* v. *Harper,* 247 P. 985 (*Estes*) (1926); *W. H. Bintz Co.* v. *Mueggler,* 516 (*Ailshie*) (1945); *U. S. Machinery Co.* v. *International Metals Dev.,* 168 P. 2d 37, 40 (*Adams*) (1946); *Pioneer Engineering Works* v. *McConnell,* 212 P. 2d 641, 652 (*Metcalf*) (1950); *Jegen* v. *Berger,* 174 P. 2d 489, 498 (*Scholtky*) (1946) (damages for loss of profits) 120 A.L.R. 759 (Ed. of the *Lawyer's Cooperative Publishing Company*) (1941).

3. A waiver in advance of all rights of the purchaser under the contract is not favored by the jurisprudence because it is against public policy since it is designed to oust the courts of their jurisdiction to determine such rights: *Progressive Finance & Realty Co.* v. *Stempel,* 95 S.W. 2d 834, 836 (*Sulton*) (1936).

The law is always an implied agreement in every written contract. Acts executed contrary to statutory provisions are void, except when the law preserves their validity, first provisions of § 4 of the Civil Code of Puerto Rico. Rights granted by the laws may be renounced, provided such renunciation be not contrary to law, to public interest or public order, or prejudicial to the interest of a third person, second provision of § 4 of the Civil Code of Puerto Rico.

The waiver of the rights granted by the law by virtue of a contract must be expressly authorized by the law itself. Inasmuch as the contracting parties can not create their own law under a contract, contracts must follow the statutory provisions except when the law authorizes the waiver of the corresponding right. The same law which authorizes the waiver of rights can establish the conditions whereby such rights may be waived.

For example, § 1055 of the Civil Code of Puerto Rico provides that "liability arising from fraud is demandable in all obligations" and that "the renunciation of the action to enforce it is void", which shows that any advance renunciation

of an action for the fraud or deceit of a vendor in order to compromise the will of the purchaser is null and void. For example, § 1374 of the Civil Code of Puerto Rico provides that "the vendor is liable to the vendee for the warranty against faults or hidden defects in the thing sold, even when they should be unknown to him", but that "this provision shall not obtain if the contrary should have been stipulated and *the vendor should not have been aware of said faults or hidden defects*", which shows that in order for the renunciation of the right of warranty against faults or hidden defects to be valid, the vendor has to prove that he was not aware of those faults or hidden defects in the thing sold, because if he is aware of them, then the sale is considered fraudulent or deceitful and the renunciation is forbidden. 10 Manresa 225, fourth paragraph (5th Ed. Instituto Editorial Reus) (1950).

The disadvantage of the vendors who rely on their renunciations of warranty against faults or hidden defects is that their knowledge of the defective workmanship or conditions which render the thing sold "unfit for the use to which it was destined" (§ 1373 of the Civil Code of Puerto Rico), is always presumed, for the vendor has the superior knowledge with regard to the thing sold, inasmuch as he is habitually engaged in the sale of a specific type of merchandise and is, in turn, guaranteed by the manufacturer or distributor of the thing sold against any defect or hidden fault thereof, as explained in case after case of the decisions copied above, the majority of which deal with the defenses of the purchaser of a defective thing (failure of consideration for breach of warranty), or the purchaser of a thing unfit for the use for which it is intended (failure of consideration for breach of warranty of fitness). Besides, whenever it is the case of the sale of a defective thing or a thing unfit for the use for which it is intended, there is always an element of fraud open to inquiry by the judicial conscience.

But now referring to this particular case, it is impossible to consider the clause of the contract which provides: "the

purchaser has received from the vendor, on this day, the vehicle which has been examined and tried by the purchaser and accepted to his complete satisfaction," as an express waiver of the implied warranty of good workmanship or fitness for the use intended, unless the evidence shows that the purchaser is an expert who *by reason of his trade or profession* could have easily detected said faults or hidden defects, according to the provisions of § 1373 of the Civil Code of Puerto Rico.

I am well aware of the important role that conditional sales play in our times in the economics of consumption. The same soundness of an economic institution which allows the acquisition of chattels by low-income consumers demands the adoption by the courts of a universal rule, that every defective thing or one unfit for the use to which it was intended, sold under a conditional sales contract, may not be retaken until the courts adjust the price according to the depreciation of the thing sold. The waiver of such rights must not be favored, because it is contrary to public policy.

I dissent.