LYNES, RESPONDENT, *v.* NORTHERN PACIFIC RAILWAY CO. ET AL., APPELLANTS.

(No. 2,901.)

(Submitted May 8, 1911. Decided May 20, 1911.)

[117 Pac. 81.]

*Personal Injuries—Master and Servant—Railroads—Complaint —Insufficiency—Contributory Negligence—Evidence—Costs— Mileage of Witnesses.*

Personal Injuries—Master and Servant—Railroads—Contributory Negligence—Complaint—Insufficiency.
1. Under the rule that where plaintiff's own act is a proximate cause of a personal injury for which he seeks to recover damages, he must

allege (and prove) that he acted as a reasonably prudent person would have done under like circumstances, *held,* that the complaint of a loco-motive engineer which alleged that, fearing a collision, he jumped from his engine and was injured, but failed to disclose the necessary facts to negative the presumption of negligence on his part in acting as he did, did not state a cause of action.

Same—Pleadings—Instructions.
2.   Where the district court undertakes in an instruction to set forth the material allegations of the pleadings and the general issues for trial, its charge should present them fully and fairly; the omission of a material admission is error.

Same—Master and Servant—Contributory Negligence.
3.   A locomotive engineer who was injured in a collision while on a certain track with his train in violation of a rule of defendant com-pany was *prima facie* guilty of contributory negligence, precluding recovery in the absence of a showing in excuse of his apparent wrong-doing.

Same—Instructions—Law of Case.
4.   The instructions are the law of the case and binding upon the jury; a verdict contrary thereto is a verdict contrary to law, which justifies a new trial, under section 6794, Revised Codes.

Same—Tables of Experiments—Admissibility in Evidence.
5.   *Held,* that tables showing the effect of experiments made by the manufacturer of the air-brakes with which plaintiff locomotive en-gineer's train was equipped, offered in evidence for the purpose of showing their available power to control the movements of trains of different tonnage under varying conditions, were admissible upon the same principle as are mortality tables, almanacs, market reports, *etc.*

Same—Railroads—Rules—Interpretation—When for Court.
6.   Where the language of defendant company's rules relative to the operation of its trains under the block signal system was plain and its meaning apparent, it was the duty of the trial court to determine the meaning to be given them and not a matter to be submitted to the jury.

Same—Costs—Mileage of Witnesses.
7.   The mileage of his witnesses which a successful party to an action may recover, under sections 3182 and 7169, Revised Codes, is not lim-ited to travel from and to their place of residence. (Expression con-*tra,* in *McGlauflin* v. *Wormser,* 28 Mont. 177, 72 Pac. 428, *held inad-vertently made.*)

*Appeal from District Court, Lewis & Clark County; J. Miller Smith, Judge.*

ACTION by Albert Lynes against the Northern Pacific Railway Company and another. From a judgment for plaintiff and an order denying them a new trial, defendants appeal. Reversed and remanded.

*Mr. Wm. Wallace, Jr., Mr. John G. Brown,* and *Mr. R. F. Gaines* submitted a brief in behalf of Appellants. *Mr. Wallace* argued the cause orally.

*Messrs. Walsh & Nolan,* and *Messrs. Purcell & Horsky,* submitted a brief in behalf of Respondent. *Mr. T. J. Walsh* argued the cause orally.

For the first time the objection is now urged that the complaint does not state facts sufficient to constitute a cause of action. Though there is no waiver of an objection of that character, the rule is that it is not looked on with favor, and that every legal intendment will be made by the court to support the pleading, which must be construed with the utmost liberality. (2 Cyc. 691; Pomeroy's Remedies and Remedial Rights, 2d ed., sec. 549.) The complaint avers that respondent's train "crashed into" extra 1308 east, with which it collided; that he jumped from his train immediately before the collision; that he jumped to avoid being killed, and while the engine was still running. Of course, he cannot recover unless, under the circumstances, a reasonable person would have jumped. If the evidence was in substantial accord with the averments so made, the conclusion would be irresistible that any reasonable person would have done the same thing. The appellant company introduced photographs to show the violence of the collision, and, as a deduction therefrom, that respondent's train was still going at a rapid rate of speed. There was no need to call an expert witness to testify that under the conditions detailed a reasonable man would have jumped had he had an opportunity. The jury draws that conclusion necessarily from the facts testified to. (See *Brockett* v. *Fair Haven & W. R. Co.,* 73 Conn. 428, 47 Atl. 763.) In *Allen* v. *Yazoo etc. R. Co.,* 40 South. 1009, some section-men, fearing they would be overtaken by a following train as they were propelling a hand-car, stopped and attempted to remove it from the track, and in doing so were struck by the approaching train. The complaint was attacked apparently on the ground that there was no averment that reasonably prudent men would have stopped as they did, but the court held the pleading sufficient when attacked as this is. The deductions to be drawn from *Poor* v. *Madison R. P. Co.,* 38 Mont. 341, 99 Pac. 947, are all in favor of the sufficiency of this complaint.

The Westinghouse company manufactures air-brakes. It issues a book, doubtless in the nature of an advertisement of its wares, in which are printed the results of alleged tests made showing the efficiency of the goods it has to sell. Appellant company tried to introduce what was said therein as to these tests, relying upon either the general rule of law in relation to scientific works or on the statute. Neither will justify the admission of evidence of this character. The book is not a work of science, but if it were, the rule is that "scientific books, as a rule, are not admissible in evidence." (2 Encyclopedia of Evidence, 587.) Under identically the same statute this very book offered to establish these very tests was held inadmissible in *Burg* v. *C. R. I. & P. Ry. Co.*, 90 Iowa, 106, 48 Am. St. Rep. 419, 57 N. W. 680; and, without reference to any statute, in *Illinois Cent.* v. *Smith*, 120 Ky. 237, 85 S. W. 237, 1 L. R. A., n. s., 1014. The California statute, from which ours comes, is canvassed in *Gallagher* v. *Railway Co.*, 67 Cal. 13, 56 Am. Rep. 713, 6 Pac. 869. The conclusions of the court utterly forbid the admission of the book in question. Nor can the contents of a book be gotten in by any indirection, as by asking a witness if his views concur with those of an author which are read to him. (*Lilley* v. *Parkinson*, 91 Cal. 656, 27 Pac. 1091; *People* v. *Goldenson*, 76 Cal. 328, 19 Pac. 170; see, also, *Union Pacific Ry. Co.* v. *Yates*, 79 Fed. 584, 25 C. C. A. 103, 40 L. R. A. 553; *Baily* v. *Kreutzmann*, 141 Cal. 519, 75 Pac. 104.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On June 1, 1906, Albert Lynes was employed by the Northern Pacific Railway Company as a locomotive engineer, operating from Missoula west and particularly between the stations of De Smet and Reid. His duty was to assist with his locomotive in drawing west-bound trains over the mountain.. On the morning of June 1 Lynes was ordered to attach his locomotive to the front of west-bound extra train No. 1300 and proceed westward. He was notified before leaving De Smet to meet east-bound extra train No. 1308—of which the defendant Bell was the engineer in

charge—at Reid, and, to effect the passage of the two trains, it was the duty of Lynes to take his train upon the siding at Reid, and he so understood the order.   Immediately after Lynes' train left De Smet, Bell's train reached Reid, pulled past the station on the main line and stopped.   The switch, by means of which Lynes' train would be placed on the siding at Reid, was some 3,500 feet east of the station.   From a point a considerable distance east of the switch to a point 200 feet east thereof the track proceeds on a downgrade of about seventy-eight hundredths per cent, and near the switch assumes an ascending grade of about two and two-tenths per cent compensated.   Near the switch there is a curve.   Lynes proceeded to take his train westward from De Smet, but passed the east switch at Reid and ran up the main line track until his locomotive collided with Bell's.   Immediately before the two trains came together, Lynes jumped from his locomotive and sustained injuries.   He brought this action to recover damages against the railway company and Bell, and alleges negligence in the following particulars: (a) Negligence on the part of Bell in running his train past the station at Reid; (b) negligence on the part of the railway company in permitting Bell's train to occupy a position on the main track east of the station; (c) negligence on the part of Bell and the crew of his train in failing to throw the east switch at Reid so that plaintiff's train would go upon the sidetrack; and (d) negligence on the part of the company in failing to give the plaintiff a caution card before he left De Smet.   The defendants answered jointly, denying all the allegations of negligence charged, and pleading contributory negligence and assumption of risk.   The trial of the cause resulted in a judgment in favor of plaintiff, and from that judgment and an order denying them a new trial the defendants have appealed.

1. It is insisted that the complaint does not state a cause of action.   It is alleged that Lynes was injured as the result of his own act in jumping from the moving train, and it is urged that the complaint does not disclose that in jumping from his locomotive the plaintiff was free from contributory negligence.   The former decisions of this court, beginning with *Kennon* v. *Gilmer,*

4 Mont. 433, 2 Pac. 21, and concluding with *Badovinac* v. *Northern Pacific Ry. Co.,* 39 Mont. 454, 104 Pac. 543, have established in this jurisdiction the exception to the general rule of pleading in negligence cases, *viz.,* that where plaintiff's own act is a proximate cause of his injury, he must allege and prove that in doing the particular act he was moved by those considerations for his own safety which would actuate a reasonably prudent person, similarly situated, to do as he did. In *Kennon* v. *Gilmer,* the excuse offered by the plaintiff for jumping from a rapidly moving coach was "apparent danger and fear of bodily injury." This court held that the allegation was insufficient to relieve the plaintiff from the imputation of negligence on his part, and the reasons, given are there set forth. In the *Badovinac Case* the plaintiff alleged that he jumped from a moving train "because (1) it was dark and he could not determine that the train was moving at a great rate of speed; and (2) the brakeman directed him to jump," and this pleading was likewise held insufficient, [1] and the subject received consideration at great length. In the present instance the plaintiff, after alleging that he was deceived by the legend on the mile-post east of the switch and because of the character of his train and the track, he ran past the switch and in Bell's train, then continues: "That immediately before such collision, plaintiff recognizing that it was inevitable, jumped from his engine while so running, as aforesaid, to avoid being killed, and in so doing received grievous bodily injuries," etc. In the *Badovinac Case* above, this court said: "In other words to show by his complaint that he was not guilty of contributory negligence he [plaintiff] must allege facts sufficient to show that he acted as a reasonably prudent person under like circumstances would have acted. This rule seems to be founded in reason. The standard of action in all such cases must be that "of a reasonably prudent person."

In order, then, to determine whether the plaintiff has stated facts sufficient, it is only necessary to ask whether the jury could say from the facts pleaded, if supported by the evidence, that he did act as a reasonably prudent person under like circumstances would have acted. Assume that plaintiff went upon the stand

and testified: "I realized that a collision between Bell's train and mine was inevitable, and I jumped from my locomotive to save my life," and that this was all the evidence upon the subject. Did he act as a reasonably prudent person would have acted under the circumstances? We undertake to say that no man or body of men could answer the question one way or another, because there are not sufficient facts upon which to base an answer or to form an opinion. If Lynes' train was running fifty miles per hour, the question would doubtless be answered in the affirmative by everyone. If, on the other hand, his train was running at two miles per hour, a negative answer might be fully justified; while, if it was running four miles per hour, different persons might disagree as to the proper answer to be made. It will be observed that the complaint does not state the rate of speed at which plaintiff's train was moving when he discovered Bell's train, or how far away Bell's train was when the discovery was made.

Nearly thirty years have elapsed since this court, in *Kennon* v. *Gilmer,* announced the rule applicable here, and there can scarcely be any excuse offered at this late day for disregarding the law as there laid down. The complaint fails to state facts sufficient to negative the presumption of negligence, and in that it fails to state a cause of action under the circumstances disclosed by the pleading itself.

2. The trial court undertook to state in instruction No. 1 the material allegations of the pleadings and the general issues for trial. Objection was made by defendants that the statement was not complete and did not fairly present the matters in issue. The objection was overruled, and error is predicated upon the ruling. In the complaint plaintiff pleads that it was his duty to place his train on the siding at Reid; but the court in its general instruction omits any reference to this admission, and when its attention was called to the omission, there was a refusal to correct the instruction so as to present the admitted fact to the jury. The admission was material, since it showed knowledge on the part of plaintiff of the duty imposed upon him and a full [2] appreciation of the duty. The practice of giving a general

charge analyzing the pleadings and defining the issues is to be commended, but such charge should present the matters fully and fairly, that the jury may be enlightened and not misled. (*Rand* v. *Butte Electric Ry. Co.*, 40 Mont. 398, 107 Pac. 87.) The trial court should have corrected the instruction so as to include the admission in the complaint mentioned above.

3. That portion of defendant's line of road between De Smet and Reid constituted a block, and the movements of trains over this track were governed by the block signal system. The semaphore at Reid was directly in front of the station and marked the beginning of the block. Under what is known as a positive block, a collision is practically impossible, for only one train can be on a block at any given time. There is, however, a permissive block upon which two or more trains may be at one time, under cautionary instructions. The siding at Reid which is altogether east of the station is not a part of the block system. This record contains more than 1400 pages. Much of it is given to explanations of the block signal rules. Without attempting a summary, we must content ourselves with the mere statement of our conclusions from the record, since it is impossible to state even the substance of the evidence within any reasonable limit.

In running his train from the west past the semaphore at Reid and entering upon the block between Reid and De Smet without orders, and despite the fact that the signal at Reid was displayed against his train, Bell was guilty of negligence. The rules under which he operated are written in plain, terse English. It was his duty to keep his train west of the semaphore at Reid, until Lynes' train had cleared the east switch and was upon the siding, for cautionary instructions were not given, such as the rules contemplate for a permissive block. In running past the east switch [3] at Reid and up the main line instead of taking the siding, Lynes violated the reasonable rules of the company and the orders under which he was operating, and was, *prima facie*, guilty of negligence which contributed to his own injury. If this record concluded with the establishment of these facts alone, Lynes could not recover, and the court so instructed the jury. In instruction 32 the jury were told that the burden was upon the

plaintiff to overcome the *prima facie* presumption of his own contributing negligence, by showing that in running past the switch and colliding with Bell's train, he was exercising reasonable care under the circumstances. In other words, the plaintiff was under the necessity of excusing himself for his apparent wrongdoing. It was his duty to stop his train before reaching the east switch and to go upon the siding. He fully understood and appreciated this, as the evidence demonstrates beyond question. In excuse of his failure to obey the rules and the orders under which he was running, the plaintiff says: "The reason I did not stop in time to go into the sidetrack, I was misled by the mile-board and could not locate the switch until I was right on it on account of the curve." In instruction 38 the court told the jury that neither one nor both of these would constitute an excuse for plaintiff's failure to stop and take the siding. This [4] instruction was the law of the case and binding upon the jury (*Bliss* v. *Wolcott*, 40 Mont. 491, 135 Am. St. Rep. 636, 107 Pac. 423), and a verdict contrary thereto is a verdict contrary to law, which justifies a new trial under section 6794, Revised Codes. (*State* v. *Radmilovich*, 40 Mont. 93, 105 Pac. 91.)

In the brief of counsel for appellants instruction 36 is treated as declaring the law above. It does not do so. Whether there is a mere clerical error or a misapprehension by counsel does not appear. The fact that instruction 38 is not mentioned would impel us to disregard this assignment but for the other errors appearing in the record.

In the brief of counsel for respondent it is insisted that there are grounds of excuse other than those mentioned by plaintiff above. However, this does violence to the plain language employed by the plaintiff, who was certainly in a position to know the causes which led to his violation of the rules and orders. It is suggested that plaintiff had been on duty a long time and that the same degree of alertness could not be demanded of him as of an engineer who had rest and sleep within a reasonable time before the accident occurred. This argument would be available if plaintiff relied upon his exhausted physical condition as a reason for forgetting his orders or as an excuse for not accurately

locating the switch; but he does not do so.   He testified that he remembered his orders, knew that he had to take the siding, and directed the fireman to call the head brakeman to turn the switch. It is also suggested that the failure of the air-brakes to work as plaintiff assumed they would was also an element to be considered in excuse for his failure to stop before reaching the switch. At least, this is the force of the argument as we gather it from the brief; but this is not available, for there is not any evidence that plaintiff endeavored to use the air to stop, until, as he says, he was right at the switch—within a car-length of it.

4. It is claimed in the complaint that the company was negligent in failing to give Lynes a caution card before he left De Smet.   Just what assistance such card would have rendered plaintiff is difficult to determine.   It would not have disabused his mind of the erroneous impression as to the location of the mile-post, or furnished him any information as to the exact location of the switch.   It would have told him that Bell's train was east of the station at Reid and within the block, but plaintiff does not claim that he ran by the switch purposely; on the contrary, the only legitimate conclusion from his own testimony is that he did his utmost to locate the switch and fully intended to stop east of it and go upon the siding, and that he did not do so because he was misled by the legend on the mile-post, and was unable to locate the switch by reason of the curve in the track immediately east of it.

5. Appellants insist that even if plaintiff showed himself excusable for running up to the switch before he located it definitely, still by the exercise of reasonable care he could have stopped his train in time to avoid the collision.   From the plaintiff's own testimony it appears that he ran past the switch from 450 to 500 feet before striking Bell's train.   The defendants offered an expert witness to prove that by the use of the air-brakes with which Lynes' train was equipped, he could have stopped the train before the collision occurred.   They also had identified certain [5] tables representing experiments made with these air-brakes by the Westinghouse company, and offered the tables in evidence as tending to show the duty or available power of these brakes

to control trains of different tonnage under varying circumstances. The offered evidence was rejected, and error is predicated upon the ruling. The tables were offered as corroborative of the expert opinion given by the witness, and as independent evidence of the facts shown. The objection to the evidence was that it was irrelevant, incompetent and hearsay. It can scarcely be said that the offered evidence was irrelevant. It tended to prove an issue which was being controverted. If the evidence was incompetent, it was so only because it was hearsay. The courts which have rejected this character of evidence have done so uniformly upon the ground that it is hearsay, coming from a witness who was not under oath in making his experiments or in compiling his tables, and not subject to cross-examination.

It may be conceded at once that the weight of authority, numerically at least, is against the reception of this particular class of evidence; yet many of the very courts which reject it admit the standard mortality tables, almanacs, market reports and the like, which have no other basis for their evidentiary value than that they represent experiments, observations or calculations made by men of learning or experience, and that they are standard works, recognized as such and acted upon by men in the particular business to which their information relates. It does not follow, because one thousand men at the age of fifty years actually live an average of 20.91 years thereafter, that any other man of the age of fifty now will survive for that exact period of time; and yet there is scarcely a court in all the land which rejects the mortality tables, and very few which now require any preliminary proof. They are admitted, not because they are absolutely correct, but because they have been found to contain reliable information as a basis of calculation or comparison, which is so generally accepted and acted upon as to be evidence of facts of general notoriety and interest. In addition to the mortality tables, almanacs and the like, the courts are now coming to adopt a more liberal and sensible view as to the admissibility of learned treatises, tables of scientific calculations, and the like. In *Garwood* v. *New York C. & H. R. R. Co.*, 45 Hun, 128, the New York court held that Leffel's Tables are admissible

to prove the service capacity of certain pumps. In *Banco De Sonora* v. *Bankers Mutual Casualty Co.* (Iowa), 95 N. W. 232, Bouvier's Law Dictionary was introduced in evidence to show the meaning of the word "adult," as used in the civil law of Mexico. In *Warrick* v. *Reinhard,* 136 Iowa, 27, 111 N. W. 983, the certificate of a Breeders' Association was admitted in evidence to show the breeding of an animal, as reflecting upon the question of its value. In *Cherry Point Fish Co.* v. *Nelson,* 25 Wash. 558, 66 Pac. 55, the court held that tide tables prepared for Puget Sound by the engineers of the Government Coast and Geodetic Service, were admissible to prove the depth of water at low tide at a particular point. In *State* v. *Coleman,* 20 S. C. 441, the court dismissed the subject with this brief remark: "We understand that an expert may be examined as to how far standard works sustain or conflict with his opinion."

In *Western Assur. Co.* v. *Mohlman Co.,* 83 Fed. 811, 28 C. C. A. 157, 40 L. R. A. 561, certain tables prepared by the United States Forestry Bureau, showing the result of tests made, and like tables from Kent's Mechanical Engineer's Pocketbook and Johnson's Strains in Frame Structures, were introduced in evidence to show the crushing strength of different kinds of timbers. Upon the admissibility of these tables the circuit court of appeals says: "That information of great value is obtained by multiplying such tests and tabulating the results is surely self-evident. Under the rule contended for, that valuable information would be available for the use of a court of justice so long as the men who made the tests and prepared the tabulations were living and producible, but after their death or disappearance the information they have gathered would be lost to the court, although available for everyone else in the community, and relied upon by engineers and builders whenever a new structure is in process of erection. Upon the precise point here presented the diligence of counsel has not succeeded in discovering a single authority. We feel, therefore, no hesitancy in so modifying the general rule as to hold that, where the scientific work containing them is concededly recognized as a standard authority by the profession, statistics of mechanical experiments and tabulations of the re-

sults thereof may be read in evidence by an expert witness in support of his professional opinion, when such statistics and tabulations are generally relied upon by experts in the particular field of the mechanic arts with which such statistics and tabulations are concerned."

These cases are cited as tending to show the disposition of courts to adopt a more liberal view as to the admissibility in evidence of documents the contents of which are available to everyone else and relied upon in the most serious affairs of life. The subject is very thoroughly treated in 3 Wigmore on Evidence, chapter 55, and the conclusion to be drawn from that learned author's discussion is, that if the proper preliminary proof is made, *viz.*, that the book or chart offered is by a person indifferent between the parties litigant, is standard among the profession, trade or occupation to which it relates, and is accepted and acted upon as accurate, it should be admitted, upon the theory that the matters which it contains are facts of general notoriety and interest.

We decline to accept the narrow definition given by the supreme court of California, in *Gallagher* v. *Market St. Ry. Co.*, 67 Cal. 13, 56 Am. Rep. 713, 6 Pac. 869, of the phrase "facts of general notoriety and interest," as used in section 7940 of the Revised Codes. Manifestly, the legislature intended that a very wide latitude should be allowed in fixing a definition for those terms. It was doubtless considered that a fact unrecognized to-day may become one of general notoriety and interest, as the result of scientific investigation or experiments. There is not any reason which will justify the admission of mortality tables, almanacs, market reports, and the like, which will not apply equally in favor of these tables. Assuming that the proper foundation was laid—and there was not any objection upon that score—we think the court erred in excluding the evidence.

6. Witnesses were interrogated at length as to the proper meaning to be given to certain rules promulgated by the railway company for the control of its employees in operating under the block signal system; and in instruction No. 3 the court sub-

mitted to the jury, for it to determine, the meaning which should be given to these rules. If the language of a rule is vague and its meaning uncertain, evidence is admissible to show the practical interpretation put upon it by those called upon to construe the rule or by those under whose supervision the rule was [6] promulgated. But where, as in this instance, the language of the rules is plain and the meaning apparent, it is the duty of the court to declare that meaning and not leave it to the speculation of the jury. (Rev. Codes, sec. 7875; *Doherty* v. *Northern Pacific Ry. Co., ante,* p. 294, 115 Pac. 401.)

7. Complaint is made of the action of the trial court in refusing to strike out of plaintiff's cost bill certain items relating to the mileage of witnesses, and an expression found in the opinion in *McGlauflin* v. *Wormser,* 28 Mont. 177, 72 Pac. 428, is relied upon as justifying the contention now urged. In the *McGlauflin Case,* Commissioner Clayberg, speaking for the court, said: "Section 4648 of the Political Code (of 1895) provides that witnesses attending a trial are entitled to ten cents per mile *each way from their place of residence to the place of trial.*" The question whether mileage should be allowed from the place of residence was not involved in that case, and the use of the word "residence" was a mere inadvertence. The statute cited does not impose any such limitation. That section, which is now section 3182, Revised Codes, when read with section 7169, [7] Revised Codes, clearly means that the prevailing party may recover his necessary disbursements, including mileage of witnesses. Whether the mileage shall be computed from the place of residence will depend upon the circumstances of each case. There was not any error committed in this instance.

8. Complaint is made of the refusal of the trial court to give certain instructions requested by the defendants. The record discloses that the court gave forty-eight instructions, which is three or four times as many as the question presented for trial warranted. The least that can be said is, that the court did not commit error in refusing to give other instructions requested.

The judgment and order are reversed and the cause is remanded for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.

Rehearing denied June 22, 1911.