[Criminal No. 806. Filed July 2, 1934.]

[34 Pac. (2d) 395.]

JULIAN GUTIERREZ, Appellant, v. STATE, Respondent.

Messrs. Cunningham, Carson & Gibbons, for Appellant.

Mr. Arthur T. La Prade, Attorney General, and Mr. John Francis Connor, Assistant Attorney General, for the State.

ROSS, C. J.—Julian Gutierrez appeals from a judgment of conviction of manslaughter. He complains. of the court's ruling denying his motion in arrest of the judgment. This motion was made on the ground that the information failed to charge the defendant with the crime of involuntary manslaughter or with any other crime. In substance and in effect this information avers that defendant, on the 13th day of March, 1933, in Maricopa county, while operating his automobile on the public streets of Phoenix, in disregard for the safety and convenience of others thereon, did negligently, recklessly and unlawfully drive and propel said automobile into and against an automobile being driven by one Aubrey Whitfield, thereby throwing said Aubrey Whitfield out of his said automobile, inflicting upon him mortal injuries of which he died on March 15, 1933. The question is, Does the information sufficiently describe the crime of manslaughter?

Section 4586, Revised Code of 1928, defines manslaughter as "the unlawful killing of a human being without malice. It is of two kinds: Voluntary, upon a sudden quarrel or heat of passion; involuntary, in the commission of an unlawful act not amounting to a felony, or in the commission of a lawful act

which might produce death in an unlawful manner, or without due caution and circumspection.''

The act charged against defendant is that, while he was doing a lawful act, to wit, operating his automobile, he operated it in an unlawful manner, thereby producing the death of Whitfield. It is a charge of involuntary manslaughter. In *Harding* v. *State,* 26 Ariz. 334, 225 Pac. 482, 484, after stating the statutory definition of manslaughter was practically that of the common law, we quoted from Wharton on Criminal Law, volume 1, section 426, the following language:

''Involuntary manslaughter, according to the old writers, is where death results unintentionally, so far as the defendant is concerned, from an unlawful act, on his part, not amounting to felony, or from a lawful act negligently performed. Hence it is involuntary manslaughter where the death of another occurs through the defendant's negligent use of dangerous agencies, and so where death incidentally but unintentionally results in the execution of a trespass.''

There can be no question but that an automobile when negligently and recklessly operated in a public street is a dangerous agency. Although we have frequently held that the means of death need not be set out in the indictment or information (*Shaughnessy* v. *State,* 43 Ariz. 445, 32 Pac. (2d) 337), this information does allege the means and describe the unlawful manner of their use and the fatal results to Whitfield.

The information alleges the negligent but unintentional killing of a human being, giving the time, place and means employed. While not in the exact language of the statute defining involuntary manslaughter, the information contains language of the same import. It is sufficient if the information clearly and distinctly sets forth the offense charged in ordinary and concise language, in such manner as

to enable a person of common understanding to know what is intended, and with such a degree of certainty as to enable the court to pronounce judgment of conviction according to the right of the case. *Sturgeon* v. *State,* 17 Ariz. 513, 154 Pac. 1050, L. R. A. 1917B 1230.

While there are cases in other jurisdictions holding that an information or indictment in homicide cases must allege the means and manner of causing death, as above indicated, that is not the rule in this jurisdiction. The trend in many of the courts is to get away from nonessentials in criminal pleading. Such has been the policy of this court, and we are not alone. In *State* v. *Gee,* 48 Idaho 688, 284 Pac. 845, 847, the death was caused by the negligent operation of an automobile, and the court held an information charging the defendant "did then and there, wilfully, unlawfully and feloniously kill one Harry Tage, a human being," stated the offense of involuntary manslaughter. The Idaho statutes prescribing what an information or indictment shall contain are the same as ours.

In *State* v. *Gondeiro,* 82 Mont. 530, 268 Pac. 507, 509, under statutes like ours, Idaho's and California's, an information, for causing death by means of an automobile, charging that the defendant "did commit the crime of manslaughter, in this, that the said defendant did willfully, unlawfully, and knowingly and feloniously kill one Mary Bykari, a human being," was held good.

We think the information stated facts constituting the offense of manslaughter, and that a conviction or acquittal thereunder could be effectively interposed to a second prosecution for the same offense, and that it sufficiently informed the defendant of the crime with which he was charged.

Complaint is made of the court's charge to the jury. The court in its instructions defined "resi-

dence districts,'' and told the jury that the speed limit in such districts was twenty-five miles per hour, and that if the defendant was operating his automobile at a greater speed than twenty-five miles, and such speed was the proximate cause of the fatal injury to Whitfield, they should find him guilty. The court also instructed the jury of the respective duties and rights of two autoists when approaching or entering a road or street intersection. It also instructed the jury that it is a misdemeanor to drive any vehicle upon a highway without due caution and at a speed or in a manner endangering, or likely to endanger, any person or property, and that, if the jury believed beyond a reasonable doubt that the defendant at the time of the accident was operating his automobile in a criminally negligent manner, with reckless disregard of his own safety, and willful indifference to the consequences likely to follow, and in such manner as to endanger the life or limb of persons who might be on said highway, and that such negligence was the proximate and immediate cause of the injury and death of Whitfield, whether the defendant specifically intended to inflict any injury on Whitfield or not, they should return a verdict of guilty.

These instructions are assigned as erroneous, ''for the reason and on the ground that the information wholly failed to charge that the defendant was driving his automobile at an excessive rate of speed. That it failed to charge that the defendant was driving his automobile at an excessive rate of speed in a residential district and failed to observe the requirements of drivers upon entering intersections of streets. That in giving the above quoted instructions the Court apparently assumed that the information charged these specific acts against the defendant, as a result of which the homicide resulted, when as a matter of fact no such charges were made, but on the

contrary only general charges were made which were wholly conclusions of the pleader.''

It was not necessary that the information contain the facts or evidence upon which the instructions were given or based. Nor was it error to instruct upon the evidence submitted to sustain the ultimate facts as alleged in the information.

Finding no prejudicial error in the record, the judgment is affirmed.

LOCKWOOD and McALISTER, JJ., concur.