## STATE v. LINGMAN.

No. 6022.   Decided June 5, 1939.   (91 P. 2d 457.)

Rehearing denied August 2, 1939.

*LeGrand A. Carlston* and *Paul E. Reimann,* both of Salt Lake City, for appellant.

*Joseph Chez*, Atty. Gen., and *Zelph S. Calder*, Deputy Atty. Gen., for the State.

WOLFE, Justice.

Appellant was convicted by the district court for Salt Lake County of the crime of involuntary manslaughter based on an automobile collision occurring within Salt Lake City. He appeals from the judgment of conviction and from denial of his motions in arrest of judgment and for a new trial.

The accident occurred about 7 a. m. September 29, 1937, at the intersection of Twenty-first South and Second West Streets, which was a residence district; appellant's car going north on Second West Street collided with the car driven west on Twenty-first South Street by Erma Layton, who died from injuries received in the accident. The Layton car after the collision traversed a distance of approximately forty-six feet over asphalt pavement, gravel, and dirt shoulders, finally stopping in a grassy area on the side of the road. The only eye witnesses were defendant, defendant's mother, who was rendered unconscious by the collision, and the deceased's daughter, who was then nine years old.

Appellants rely chiefly upon three broad grounds of error: (1) The trial court erred in receiving certain sections of the Salt Lake City Ordinances in evidence; (2) It was error to permit the conclusion of an expert in physics as to the speed of defendant's car based on the tire marks, weight of cars, and other facts assumed or testified to; and (3) Some of the instructions given were erroneous and others were wrongfully refused.

It was objected that the ordinances were invalid because contrary to the state law; that they could not be introduced in evidence because not pleaded; and that violation of them could not form the basis of a charge of involuntary manslaughter. R. S. Utah 1933, 57-7-16, as amended by Chap. 48, Laws of Utah 1935, provides, among other things, in substance that driving in excess of twenty-five miles an

hour in any residence district is prima facie evidence that the speed is not reasonable or prudent and hence unlawful, whilst the City Ordinance of 1934, Section 1382, provides that driving in excess of twenty-five miles per hour in any district designated as residence "shall be unlawful." R. S. Utah 1933, 57-7-6, denies local authorities the power "to enact or enforce any rule or regulation contrary to the provisions of this chapter * * *." The question on this branch of the case is whether the ordinance is so "contrary."

Under the statute if a person is charged with driving at an unlawful speed because in excess of twenty-five miles in a twenty-five mile zone, evidence of excessive speed is only prima facie evidence of unlawfulness and he may introduce evidence as to the surrounding circumstances on the theory that he could exceed the stated figure and still be "reasonable and prudent, having due regard to the traffic, surface and width of the highway and the hazard at intersections and any other condition then existing." He has the right to overcome the prima facie case. If charged under the ordinance, however, justifying circumstances are immaterial as the ordinance pronounces an unbending fiat. The authorities we have been referred to or have found are to the effect that such a difference between ordinance and statute is fatal to the ordinance where statutes are preeminent in the matter regulated. *Eshner* v. *City of Lakewood,* 121 Ohio St. 106, 166 N. E. 904; *Ex parte Daniels,* 183 Cal. 636, 644, 192 P. 442, 446, 21 A. L. R. 1172; *Winters* v. *Bisaillon,* 152 Or. 578, 54 P. 2d 1169; *Mendel* v. *Dorman,* 202 Ky. 29, 258 S. W. 936; *Baraboo* v. *Dwyer,* 166 Wis. 372, 165 N. W. 297; *Schneiderman* v. *Sesanstein,* 121 Ohio St. 80, 167 N. E. 158, 64 A. L. R. 981; *Hoigard* v. *Yellow Cab Company,* 320 Ill. 317, 150 N. E. 911; 1 Blashfield, Cyclopedia of Automobile Law, Permanent Edition, § 33. See, however, *Hood & Wheeler Furniture Co.* v. *Royal,* 200 Ala. 607, 76 So. 965. We hold that under our statute this ordinance is beyond the power of the city to enact and is therefore void. We are strengthened in this de-

cision by a comparison of the section in the 1933 Revised Statutes with the 1935 amendment. The 1933 statute applied "on all public highways, outside of the limits of incorporated cities and towns" and provided that "no person shall drive a vehicle upon a highway at a speed in excess of that indicated below for the particular district or location." Under that statute the ordinance here in question might have been valid because not contrary to the statute. But the 1935 amendment makes the statute applicable in cities and towns and introduces the rule that exceeding the named speed is prima facie evidence of unlawfulness and not unlawfulness per se. The ordinance introduced is, therefore, invalid and should not have been received in evidence. (The provisions of the ordinance enacted in 1935 are not before us and may or may not adopt the rule of Section 57-7-16, as amended in 1935).

Next question: Was Beckstrand an expert who could testify as to speed, deduced from the laws of physics? He was given certain information as to weight of cars, type of highway, positions of the cars, point of impact, and the marks made by the car which was struck as it skidded sideways and diagonally across and off the highway, and was asked his opinion as to the speed of defendant's car at the moment of impact, which he had computed according to a mathematical formula based upon the distance northward or sidewards the impact had driven the struck car. The witness was in charge of the department of mechanical engineering at the University of Utah and had been teaching there since 1902, his work including the laws of impacts. Whether this qualified him as an expert was a question primarily for the court. *Mary Jane Stevens Co.* v. *First National Bldg. Co.*, 89 Utah 456, 500, 57 P. 2d 1099; *Coon* v. *Shields*, 88 Utah 76, 39 P. 2d 348; *Battle Creek Bread Wrapping Mach. Co.* v. *Paramount Baking Co.*, 88 Utah 67, 75, 39 P. 2d 323; *Graham* v. *Ogden Union Ry. & Depot Co.*, 79 Utah 1, 6, 6 P. 2d 465; *Walkenhorst* v. *Kesler*, 92 Utah 312, 332, 67 P. 2d 654; *Lenehan* v. *Travers*, 288

Mass. 156, 192 N. E. 495; Wigmore, Evidence (2nd Ed.) Section 561. We find no error in the court's ruling that he was an expert in the law of impacts.

It is objected that the witness had conducted no experiments in automobile collisions and was therefore not an expert in this particular type of impacts. But this is to assume that the laws of impact of bodies do not apply to automobiles or apply in a specialized way which can be known only to one who has conducted such experiments. The professor testified that the laws of impact of bodies were applicable to automobiles since they were "bodies." The collapsibility is taken care of in the coefficient of restitution which was taken as zero, i. e., no rebound after impact. Examples of bodies with a high coefficient of restitution are rubber or billiard balls; with no coefficient of restitution,—soft clay balls.

The use of tire marks of a skidding automobile as the basis for expert testimony is well recognized. *Monaghan* v. *Keith Oil Corporation*, 281 Mass. 129, 183 N. E. 252; *McKinney* v. *Wintersteen*, 122 Neb. 679, 241 N. W. 112; *Ronning* v. *State*, 184 Wis. 651, 200 N. W. 394; *Saladow* v. *Keystone Transportation Company*, 241 App. ■ Div. 161, 271 N. Y. S. 293; *Linde* v. *Emmick*, 16 Cal. App. 2d 676, 61 P. 2d 338; *Rentz* v. *Collins*, 51 Ga. App. 782, 181 S. E. 678; 9 Blashfield, Cyclopedia of Automobile Law, Permanent Edition, § 6238; 70 A. L. R. 544, 545. We have found no case, however, which employs such skid marks in precisely the way done here.

Appellant cites authorities where "expert testimony as to the movement of automobiles involved in collisions was considered" and rejected. But in those cases there was an unreliable personal equation for which the experts could not make allowance, such as the skill of the drivers and their reactions in an emergency in addition to the unknown speed of one or both the cars where that was of controlling importance. *Fishman* v. *Silva*, 116 Cal. App. 1, 2 P. 2d 473; *Johnston* v. *Peairs*, 117 Cal. App. 208, 3 P. 2d 617. See also

9 Blashfield, Permanent Edition, op. cit., § 6312. But in the instant case those unknowable and unpredictable factors were of no significance under the hypothesis of this witness. The skid marks of the pushed car from the point of impact showed only a direct sideward movement with the car remaining parallel to Twenty-first South Street and no twirling motion of the car, from which it could be inferred that the factors of human reaction and momentum were of no significance.

This witness based his opinion on a formula which included only the purely physical facts of directions of the two cars and their weights, the point of impact, the coefficient of restitution (the amount of bounce or recoil from the collision), the frictional resistance of the surface over which the struck car was pushed and the distance of the sideward movement in the struck car. All of these elements were, in the hypothetical question, asked the witness. He admitted that the accuracy of his opinion depended upon the accuracy of the assumed facts. Appellants contend, however, that facts were omitted which were undisputed and that assumptions were made which were based on mere conjecture and not on evidence.

The facts claimed to have been omitted included speed and movement of deceased's car in a westerly direction, movement of defendant's car after the collision, the amount of tread of tires on the struck car, the varying types of surfaces over which the car struck was launched, the varying elevations of the surface traversed, the inflation of the tires and the composition of the road. ■
The witness stated that differences in makes of car, inflation and wear of tires, speed of deceased's car (where struck squarely on the side) and movement of defendant's car after the collision were immaterial. While it would seem to be a fact of common experience that a broad tread on a tire (deflated tire) would present more resistance to a push than would a narrow tread, such matters went only to the credibility and not to the admissibility of the testimony.

They were matters for cross-examination and argument to the jury. *Battle Creek Bread Wrapping Machine Co.* v. *Paramount Baking Company,* supra, 88 Utah at page 75, 39 P. 2d 323; *Coon* v. *Shields,* supra, 88 Utah at page 80, 39 P. 2d 348; Wigmore, op. cit. Sec. 662; *Roark Transportation, Inc.,* v. *Sneed,* 188 Ark. 928, 934, 68 S. W. 2d 996; *E. L. Chester Co.* v. *Wisconsin Power & Light Company,* 211 Wis. 158, 162, 247 N. W. 861; *Vogt* v. *Southern Coal, Coke & Mining Company,* 210 Ill. App. 620, 629.

The witness admitted that the type of surface which the struck car traversed would have much to do with the resistance to push. The witness assumed the coefficient of friction to be 0.6 and "assumed the coefficient would be the same all the way along." This coefficient was taken from a table of a mechanical engineer's handbook recently issued by the Iowa State College and "prepared from actual experiments." We cannot say that the probability of its accuracy was not sufficiently established by the showing made to permit its figures to serve as a part of the expert's formula. However, it might have been better had the tables from which the coefficients of fractional resistance were taken been introduced in evidence. *Western Assurance Co.* v. *J. H. Mohlman Co.,* 2 Cir., 83 F. 811, 821, 40 L. R. A. 561; *Lynes* v. *Northern Pacific R. Co.,* 43 Mont. 317, 327, 117 P. 81, Ann. Cas. 1912C, 183; Wigmore op. cit. Sec. 665. This manual gave the frictional resistance for different roadways as ranging from 0.62 up to 0.8, and on asphalt roadways and gravel roadways from 0.65 to 0.8. The witness testified that he took a fraction "lower than any of these, so as to make any allowance for any difference in the roadway in this case. He could have based his computations on a surface divided into different distances for different types of roadway, but instead he took a theoretical average which was lower than that for any roadway in his manual. The lower the coefficient of friction the more favorable would the calculation be to the defendant. The coefficient taken was lower than that of asphalt and of the

gravel part traversed. Whether lower than the dirt or grass where it finally landed is problematical. The formula was certainly of probative value in determining the speed with which defendant's car struck the other car.

Appellant contends that unless the facts stated in the hypothetical question were undisputed or proved beyond doubt the answer should be incompetent and inadmissible. Such, however, is not the law. Where facts assumed in a hypothetical question are supported by testimony even though there remains a conflict in the evidence, the ■ jury must weigh the evidence and decide whether the factors on which it is based have been proved to its satisfaction and if so the weight which should be given to the answer of the expert on the hypothetical question. *Mary Jane Stevens Co.* v. *First Nat. Bldg. Co.*, supra, 89 Utah 456, 503, 57 P. 2d 1099; *Treadwell* v. *Nickel*, 194 Cal. 243, 228 P. 25; *Richards* v. *Watson Flagg Eng. Co.*, 109 N. J. L. 128, 160 A. 500; *Anderson* v. *United States Railroad Adm.*, 203 Iowa 715, 211 N. W. 872; *Finch* v. *Weiner*, 109 Conn. 616, 145 A. 31; Wigmore on Evidence (2nd Ed.) Sec. 675, 680.

We do not mean to state that in all cases of impact such evidence by experts as was here introduced is admissible. But under the physical circumstances of this case, as shown by the tire marks demonstrating that the car had been pushed sidewise and not twisted, the evidence was admissible. In the matter of conducting inquiries into controverted questions of fact, the law must avail itself of those aids which science furnishes if there is fair probability of their reliability in supplying the basis of inference. It is another application of the best evidence rule.

It is argued that the witness' testimony was inadmissible because it was based partly on matters which he testified someone told him and not on his personal observation. The objection is also made that the answer of the witness was based upon a statement of facts theretofore furnished him by Officer Pierce and not upon the facts

stated in the question, and that there were material differences in the facts furnished by the officer and those stated in the hypothetical question. That there were some differences is evident. It is well established that hypothetical questions need not be based on facts observed by the witness. Experts may give answer to such questions both on their own observations as a foundation or on evidence adduced from other sources which may for the purposes of the question be assumed as facts. *Wilson* v. *Guaranteed Securities Co.*, 82 Utah 224, 234, 23 P. 2d 921; *Atlantic Life Ins. Co.* v. *Vaughan*, 6 Cir., 71 F. 2d 394, certiorari denied, 293 U. S. 589, 55 S. Ct. 104, 79 L. Ed. 684; *Monark Battery Co.* v. *Industrial Commission*, 354 Ill. 494, 188 N. E. 413; *Ballance* v. *Dunnington*, 241 Mich. 383, 217 N. W. 329, 57 A. L. R. 262; *Hester* v. *Ford*, 221 Ala. 592, 130 So. 203; *Wolczek* v. *Public Service Co.*, 342 Ill. 482, 498, 174 N. E. 577; *Treadwell* v. *Nickel*, 194 Cal. 243, 228 P. 25; Wigmore, op. cit. Sec. 652. But experts cannot give an opinion on matters not observed by them or not in evidence by the testimony of others. We have discussed with perhaps too much particularity the claimed omissions and intrusions of facts claimed not to be in evidence. We do not consider it necessary to further discuss this question, save to advance the admonition that the court and counsel should be careful to see that a hypothetical question presents or assumes no fact that is not in evidence; that it does present all facts or elements necessary to the determination to be made by the witness, or to enable him properly to form an expert opinion; and that no material element or fact is used by the witness in his determinations that is not presented in the question as asked.

The third general group of assignments of error relate to instructions to the jury. We find error in the court's instruction, No. 6, with reference to the speed ordinance herein held invalid. The jury was instructed that (Instructions 5 and 6) "the crime of involuntary manslaughter may

be committed * * * First: When the killing is without malice and is proximately caused by the doing of an unlawful act not amounting to a felony, as, for example, the violation of the provisions of a state statute regulating the driving of a motor vehicle on the highway." Alleged unlawful acts set forth in the instructions were, First, failure to yield the right of way; Second, the basic speed law of the statute; and Third, the ordinances of Salt Lake City making it "unlawful for any person to drive a vehicle upon any street in the residence district of Salt Lake City at a speed in excess of 25 miles per hour * * * and that any violation thereof is an unlawful act not amounting to a felony." The jury might have found that defendant exceeded the speed of 25 miles per hour which was per se unlawful under the ordinance and sufficient to constitute involuntary manslaughter when death resulted. Such use of the invalid ordinance in the instructions was prejudicial and constitutes reversible error.

Even if the speed ordinance had been valid the instruction would be erroneous for reasons now to be given. We consider them in order that the court on retrial may be advised in case a valid ordinance is introduced instead of the invalid one.

The information alleged only the unlawful killing as involuntary manslaughter contrary to the provision of the statutes of the state (meaning against the manslaughter statutes). The bill of particulars alleged speed in excess of forty miles an hour, "which speed was dangerous and excessive in view of the width, construction and obstructions of the said driver's view along the said highway and the hazard of the intersection hereinbefore mentioned." Nowhere in the information or the bill of particulars is it alleged that the accident took place in a residence district of the city where the speed limit was fixed by a purported ordinance at 25 miles per hour. It is only alleged that the accident took place in Salt Lake County. Could the allegation of a speed in excess of forty miles have been related to an allegation that the accident took place in the residential portion of the city there

might be pieced out of the combination of these particulars sufficient to permit an inference that the unlawful act charged was a violation of a city ordinance as well as of a state statute. The speed ordinance was in fact not introduced in pursuance of an allegation but apparently under the theory of *State* v. *Freeman,* 93 Utah 125, 71 P. 2d 196, "as one of the circumstances" of the accident. The writer dissented in that case. But as such it was only evidence. If the instruction meant to treat it as evidence, it violated the rule of singling out a particular piece of evidence. If the instruction intended to treat the violation of the ordinance as one of the unlawful acts on which the information was founded, the answer is that such violation was not made the basis of the charge either in the information or bill of particulars for reasons above stated. It must, therefore, be treated as a charge only that the statute was violated, there being no basis to support the third unlawful act of violation of an ordinance set forth in the instruction. Therefore, the assignment as to instruction No. 6 was well taken. *State* v. *Marasco,* 81 Utah 325, 336, 337, 17 P. 2d 919; *Bishop* v. *United States,* 8 Cir., 16 F. 2d 406; *People* v. *Hamilton,* 336 Ill. 294, 168 N. E. 325; *People* v. *Ficke,* 343 Ill. 367, 175 N. E. 543.

It was assigned as error to charge that failure to yield the right of way could be the unlawful act not amounting to a felony to support involuntary manslaughter when such was not charged in the information or set forth in the bill of particulars. But the bill of particulars charged "wilful and wanton disregard for the rights and safety * * * of one Erma Layton, who was then and there driving an automobile in said intersection." This was a sufficient allegation to support an instruction based on evidence of failure to yield the right of way. *Gutierrez* v. *State,* 44 Ariz. 114, 34 P. 2d 395.

It is the contention of appellant that since intent to kill is not present in manslaughter the union of act must be with "criminal negligence"—in accordance with Section 103-1-19, R. S. U. 1933, which reads as follows:

"In every crime or public offense there must exist a union or joint operation of act and intent, or criminal negligence."

With that view he requested an instruction defining criminal negligence as follows:

"You are instructed that the term 'criminal negligence' under the laws of the State of Utah does not mean merely the failure to exercise ordinary care or that degree of care which an ordinarily prudent person would exercise under like circumstances. It means gross negligence. It is such negligence as amounts to a reckless disregard of the consequences and of the rights of others."

The court refused it, together with two others of the same nature. The questions which these assignments and certain others respecting given instructions present for consideration involve the interpretation of the statute on involuntary manslaughter in relation to the statutes prescribing standards of care in the driving of motor vehicles and making a violation of such standards a misdemeanor. The subject presents considerable difficulty, rather confused than clarified by the cases, and requires for that reason more extended treatment than would otherwise be justified.

The statute on involuntary manslaughter with transpositions but no word changing reads:

"Involuntary manslaughter is the unlawful killing of a human being without malice in the commission of (a) an unlawful act not amounting to a felony, or (b) in the commission of a lawful act which might produce death (1) in an unlawful manner or (2) without due caution and circumspection."

We shall first consider the (a) arm of the above definition. There is respectable authority to the effect that it only applied to acts malum in se. *Commonwealth* v. *Adams,* 114 Mass. 323, 19 Am. Rep. 362; *State* v. *Budge,* 126 Me. 223, 137 A. 244, 53 A. L. R. 241, 245; 13 R. C. L. 848; *People* v. *Sullivan,* 173 N. Y. 122, 65 N. E. 989, 63 L. R. A. 353, 381, 93 Am. St. Rep. 582; *Johnson* v. *State,* 66 Ohio St. 59, 63 N. E. 607, 61 L. R. A. 277, 90 Am. St. Rep. 571, 575.

If, for instance, one in anger struck but did not intend to materially injure another, and the result was a fall from which he died, the statute visited on him the consequences of his act in the form of punishment for involuntary manslaughter, regardless of absence of specific intent to effect such a consequence. In the same manner, somewhat analogous, was the principle that if a man killed another in the commission of certain felonies such as burglary, he would be guilty of first degree murder, even though he even tried to avoid harm to the victim. It was enough that the killing occurred during the course of the commission of the burglary. Likewise, when one commits a misdemeanor, malum in se, it is enough that the killing occurred in the course of, or by reason of, such misdemeanor, as long as there is a causal relationship between the act which is a misdemeanor and the death. But we think arm (a) also refers to some acts which are malum prohibitum, but not all such acts. If we consider in connection with arm (a) Sec. 57-7-16, R. S. U. 1933, as amended by Chap. 48, Laws Utah 1935, we note that there are some infractions of the standards of care therein laid down which may be the basis for a charge under arm (a) of the manslaughter statute and some which may not, although all infractions of such standards of care are denounced as misdemeanors.

Section 57-7-16, as amended, reads (in part) :

"(1) On all public highways, it is unlawful for any person to drive a vehicle upon a highway at a speed greater than is reasonable and prudent, having due regard to the traffic, surface and width of the highway and the hazard at intersections and any other condition then existing.

"Nor shall any person drive at a speed which is greater than will permit the driver to exercise proper control of the vehicle and to decrease speed or to stop as may be necessary to avoid colliding with any person, vehicle or other conveyance upon or entering the highway in compliance with legal requirements and with the duty of drivers and other persons using the highway to exercise due care * * *."

There are many other rules for driving mentioned in Title 57, the infraction of which may constitute a misdemeanor,

but not all of which would constitute the basis for a conviction for manslaughter if death should result from the infraction. Infractions of rules of traffic may run the gamut from mere inadvertence or slight omissions to "any act greatly dangerous to the lives of others and evidencing a depraved mind, regardless of human life," which is first degree murder. R. S. 1933, 103-28-3. Concretely illustrated, the gamut of infractions of the traffic laws may range from all but completely stopping at a stop sign before entering a sparsely travelled portion of an arterial highway, to a drunken driver's madly careening down a traffic-laden street. Death from the former would only give rise to a civil action; from the latter perhaps a charge of murder. Where is the line at which the infraction becomes more than civil negligence, that is, criminal negligence? It is not possible to draw it mathematically. The accordion words like "mere negligence" and "gross negligence" or "wanton negligence" suggest comparisons only and give no absolute rule for guidance. We think the "unlawful act", that is, the infraction, must be done in such a manner as to more than constitute a mere thoughtless omission or slight deviation from the norm of prudent conduct. It must be reckless or in marked disregard for the safety of others. When it does that, it passes the stage of mere malum prohibitum and approaches the unsocial aspects of malum in se. And the spirit of the person while committing the infraction is not a test. A truck driver seriously bent on meeting a schedule of his rounds who shoots through an intersection as if he were driving the only car extant, is just as guilty of reckless conduct as the driver of a car full of revelers joyously celebrating a football victory. Criminal negligence therefore sufficient to satisfy arm (a) of the manslaughter definition means more than mere thoughtlessness or slight carelessness. It means reckless conduct or conduct evincing a marked disregard for the safety of others.

We now turn to arm (b) of the statute, R. S. 1933, 103-28-5(2), i. e., the commission of a lawful act which might pro-

duce death (1) done in an unlawful manner or (2) done without due care and circumspection. It will be noted that in this arm the act done contains the ingredient of "might produce death." Theoretically any act might produce death. A slight scratch of a pin "might" produce death. We construe the phrase to mean "fraught with potentialities for producing death," illustrations of which are the running of a car at high speed, however carefully, handling of loaded arms, explosives, deadly germs, etc.

The distinct characteristic then of arm (b) is that the act must be one which has knowable and apparent potentialities for resulting in death. If such an act is done in an unlawful manner or without due care and circumspection, the criminal negligence is present. In other words, a dangerous act done in an unlawful manner or even with lack of the care which such an act calls for is done with criminal negligence. It does not require reckless handling or conduct evincing marked disregard for the safety of others. The ingredient of intrinsic dangerousness, plus the unlawful manner or the lack of due care and circumspection demanded by the nature of the act, even be that slight, constitutes criminal negligence. It is quite true that certain infractions of the traffic laws where the violation is done in a reckless manner or with marked disregard for the safety of others may also rise to the level of acts fraught with danger to human life, and perhaps be chargeable either under arm (a) or (b) of the statute.

Strictly speaking, under (b) the doing of the dangerous act is not itself unlawful. There must always be the ingredient of doing it in an unlawful or careless manner, whilst under (a) some acts amounting to a violation of the traffic laws may be, by their very nature, dangerous to life. They are, therefore, unlawful and dangerous to human life, but since the test is reckless action or action marked by disregard of safety of others, the element that it might produce death if such element be present may be, in charging under the (a) arm, ignored. An illustration will

make it clear. If the speed limit is thirty miles per hour and a driver goes thirty-five miles per hour, he is violating the law, but the jury must also find that his action in so going was reckless in order to convict him under the theory of the (a) arm. It may also be the case that such speed was one which under the circumstances might produce death, but that is looked at as incident to, or a consequence which may result from, the recklessness. Since the act itself was unlawful, the jury does not need to find that element. If, however, the speed limit is sixty miles per hour and the driver is going fifty-five miles an hour, he is not by that alone doing an unlawful act. But if the jury finds that such speed might produce death (which it well might), then he is guilty of manslaughter, if in addition he did not carefully watch the road and for that reason an accident occurred. Such would come under arm (b). But wherever the act he was doing was itself unlawful and reckless, the charge may be under arm (a), without the jury's determining whether the recklessness was such as might produce death, for surely if a lawful act which might produce death if done without due care, is manslaughter, the doing of an unlawful act which might produce death is manslaughter. In arm (a) the element of its potentiality for producing death is not material. Its unlawfulness plus recklessness only is material.

In another aspect some acts which are chargeable under (a) according to the above tests may be chargeable under (b) or, stated in another way, acts which are chargeable under (b) by a certain construction of the statute may be chargeable under (a). Arm (b) speaks of the "doing of a lawful act, which might produce death, in an unlawful manner." This excludes at once all acts which are totally prohibited such as driving without a license, driving while under the influence of intoxicating liquor, driving a car with bad brakes or with lights below test standards, etc. None of these can, regardless of how careful the driving, come under (b). And if such act totally prohibited is done recklessly or with marked disregard for

the safety of others, it will be done with criminal negligence and if death results will sustain a charge of manslaughter under arm (a). But if the act is not prohibited but allowed and the manner in which it is done is unlawful, and it is of such a nature as might produce death, by one method of reasoning it may be brought under arm (b). Thus, the act of driving a car by a proper party is not prohibited, but if that act of driving is done in a manner denounced as unlawful by Title 57, it may be denominated a lawful act done in an unlawful manner. Thus the act of driving may be considered lawful but beyond a prescribed or safe speed considered done in an unlawful manner. If added to that the manner in which the act is done or circumstances under which it is done are such as to be fraught with potentialities for producing death, we have a situation, looked at from this analysis, which will support a charge under (b) (1). But under the law regulating automobile traffic, driving in an unlawful manner may be looked at as a total unlawful act, rather than broken down into the elements of lawful act of driving, plus an unlawful manner. Paradoxically, the lawful act of driving in an unlawful manner is an unlawful act. Hence, if done with recklessness or with marked disregard for the safety of others, it may as well be considered as falling under arm (a). And of course if the act is fraught with danger to life and done in an unlawful manner, it could hardly be other than done recklessly.

It is not necessary to state that arm (b) (1) is useless in automoble cases. There may be some situations we have not conceived of in which it may serve, but as far as we can at present perceive there are no acts regarding the manner of driving an automobile which are denominated unlawful which cannot be conceived of as being an unlawful act. Hence, we feel that the problem is simplified by charging under arm (a) unless the act is lawful, fraught with danger to human life and done without due care and circumspection, in which case it will come under arm (b) (2) above.

From what has been said above the following rules may be deduced: In manslaughter cases the charge may embrace the causing of death (1) in the commission of an unlawful act not amounting to a felony but malum in se; (2) in the commission of an unlawful act not amounting to a felony malum prohibitum, but of such a sort as to involve a marked disregard for the safety of others or recklessness (both of the above come under arm (a) of Section 103-28-5(2); (3) in the doing of an act fraught with apparent danger to human life when such act is done in an unlawful manner; (4) in the doing of the same sort of an act without the care or circumspection such an act would demand from a prudent person.

Since this case is to be reversed, we shall content ourselves with applying the above rules as guides in the formulation of instructions for the next trial of the case, according to the issues raised by the bill of particulars. This will be found affirmatively more profitable than discussing wherein the lower court did or did not err in the giving or refusing of instructions in the trial appealed from, and will, we think, incidentally resolve the contentions of counsel for both parties. The issues are raised by the bill of particulars. The third paragraph of the bill of particulars reads:

"Means: That at said time and place the said Defendant was driving and operating said automobile carelessly and heedlessly, and with a wilful and wanton disregard for the rights and safety of others, and without due caution and circumspection, and at such a speed and in such a manner as to endanger the life of one Erma Layton, who was then and there driving an automobile in said intersection, and in consequence whereof said George Lingman did not have said automobile under safe, proper, and immediate control."

The violations complained of are "operating the defendant's auto * * * with a wilful and wanton disregard for the rights and safety of others * * * into the intersection." This constituting a violation of Title 57 and alleging wilful and wanton disregard for the rights of others lays a charge

under the (a) arm of Section 103-28-5 (2) under rule two above. The fact that the rhetorical words "without due care and circumspection" are added does not change the charge into the (b) arm. The very act as charged involves recklessness and a marked disregard for the safety of others. And we do not think the words "and in such a manner as to endanger the life of one Erma Layton" require a charge under the (b) arm because this sentence is tacked onto allegations which charge an unlawful act under Title 57 of the Revised Statutes, to wit: driving with a wanton disregard for the safety of others which allegation, as stated before, also alleges criminal negligence.

But while the allegations would justify a refusal to instruct in accordance with arm (b), because sufficiently covered by an instruction under the theory that the information charged an offense under arm (a), an instruction given on the theory that the information charged that driving forty miles an hour was lawful (although prima facie unlawful by Title 57) but was done in an unlawful manner or without due care and circumspection (being in wilful and wanton disregard for the rights of others and hence under Title 57 in a manner denominated as unlawful) would not be error if it charged in addition that the jury must find the said driving was done in such a manner as might produce death. But such instructions would most likely appear contradictory and confusing to a jury, and if the full complement of elements can be made out under arm (a), it is not recommended to include an instruction also under the theory of arm (b).

The fourth paragraph of the bill of particulars alleges a driving in excess of forty miles per hour "which speed was dangerous and excessive"; then it continues with words which show a driving under such circumstances as would make the manner of driving a violation of Title 57. And since the bill must be read as a whole, there is coupled with such allegations the allegation of "wilful and wanton disregard for the safety of others" which certainly

includes a "marked disregard for the safety of others"; hence this charge also comes under arm (a). If forty miles an hour had been a lawful speed, then the allegation that it was dangerous to human life, plus the allegation in the second paragraph of the bill that "defendant failed to keep a proper and sufficient lookout ahead and failed to observe the course of his automobile to see if it was obstructed," would allege the necessary lack of "due care and circumspection" which, added to the lawful speed with potentiality for producing death, would present a situation for an instruction under arm (b).

In consequence, the instruction of the court on this question in this case may be substantially as follows: If the jury finds that Mrs. Layton was killed by the impact and that the impact was caused by the driving of the defendant in a reckless manner or with marked disregard for the safety of others, as charged in the information, then such driving being unlawful and in violation of the provisions of Title 57 as set out, would sustain a conviction of manslaughter.

For reasons herein given, the judgment is reversed with instructions to set aside the judgment and conviction and grant a new trial in accordance with the principles herein laid down.

MOFFAT, C. J., and McDONOUGH and PRATT, JJ., concur.

LARSON, Justice (concurring).

I concur. I think it is probable that no distinctions were intended between the doing of a lawful act in an unlawful manner and doing it without due caution and circumspection. They seem to be interchangeable, inter-definitive. The conjunctive *or* need not be construed as dividing the arm into subdivisions but may be read "in an unlawful manner or [as we may put it] without due caution and circumspection." That is to say, that which is done without due caution and

circumspection may be said to be done in an unlawful manner, and if the act is one inherently or intrinsically dangerous to human life, one "which might produce death," so doing it is criminal negligence.